## MANGOLD MIDWEST COMPANY AND OTHERS v. VILLAGE OF RICHFIELD.

143 N. W. (2d) 813.

July 1, 1966—No. 39,824.

*Feinberg, Mirviss, Meyers, Schumacher & Malmon,* for appellants.
*Howard, Peterson, LeFevere, Lefler & Hamilton* and *Clayton L. LeFevere,* for respondent.

FRANK T. GALLAGHER, C.

This is an appeal from the judgment of the district court declaring Ordinance No. 11.10 of the village of Richfield to be a valid and enforceable ordinance.

Plaintiffs in this case, Mangold Midwest Company, United Distributors of Minnesota, Inc., and A. M. Servicing Corporation of Raytown, operate a large retail department store at 7701 Nicollet Avenue South in the village of Richfield. The store has been operating in that location since 1959. From the time of its opening until May 1962, the plaintiffs experienced no difficulty in keeping their store open on Sundays as was the practice of other retail stores in Richfield at that time.

On February 13, 1962, the village of Richfield passed Ordinance No. 11.10 entitled "An Ordinance Relating to Business Activities on Sundays, Prohibiting Certain of Such Activities, and Providing Penalties for Violations." The predecessor of plaintiff A. M. Servicing Corporation commenced a declaratory judgment action shortly after the enactment of the ordinance seeking to have the ordinance declared invalid. The trial court found for the defendant village and no appeal was taken from that decision, dated May 9, 1962.

Plaintiffs' store remained closed on Sundays from May 1962 until October 11, 1964, during which period other stores in Richfield remained open and sold restricted items. There was testimony from owners and managers of those stores which remained open that their employees

were instructed not to sell restricted items on Sunday, but several also testified that they were aware that at one time or another restricted items were sold either by inadvertence or in case of an assurance by the buyer that an emergency existed. The Richfield police officers apparently witnessed few violations in their regular investigation of the establishments which remained open on Sundays during this period and brought charges against only two.

During September and October 1964, plaintiffs hired three persons to attempt to purchase restricted items in other stores in Richfield. It was apparent from affidavits of those persons that they were very successful in purchasing such items. In any event, plaintiffs wrote a letter to the officials of the village October 7, 1964, and informed them of the results of the purchasing project and their feeling that it revealed discriminatory enforcement of the ordinance. The letter also informed the officials that plaintiffs intended to again engage in business on Sundays, beginning October 11, 1964.

On that Sunday plaintiffs' store did open for business and plaintiffs were charged with violation of the "Sunday closing" ordinance. Two other stores in Richfield, not owned by plaintiffs, were also served with complaints on that day charging them with violation of the same ordinance. The officer responsible for serving the complaints testified that he had been told by his supervisor to serve a couple of other stores so that it would not look as if the village were discriminating against the plaintiffs.

Sales at the plaintiffs' store amounted to about $18,000 each Sunday the store was open from October 11, 1964, to the time of trial, October 29, 1964.

Plaintiffs obtained a temporary restraining order on October 13, 1964, enjoining the village from enforcement of the ordinance and commenced this declaratory judgment action. After a decision on January 19, 1965, upholding the validity of the ordinance, the trial court restrained the village from enforcement of the ordinance until this court could determine the matter which is now before us on appeal.

The legal issues raised by plaintiffs on appeal are:

(1) Is Richfield Ordinance No. 11.10 invalid as being in conflict with

Minn. St. 624.01 to 624.03? (2) Is the ordinance invalid on the basis that it attempts to regulate business in a field preempted by state law? (3) Has the village of Richfield been guilty of purposeful discriminatory enforcement of Ordinance No. 11.10 so that such further enforcement should be enjoined?

■ Turning to the first issue, there is little question as to the general law concerning the latitude allowed a municipality in passing ordinances relating to Sunday observance. It is simply that such ordinances passed by a municipality in the exercise of a police power conferred on it either expressly or by necessary implication will generally be upheld if they are not inconsistent with the state law. See, Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967, 18 A. L. R. 733; Annotations, 29 A. L. R. 397, 400, and 37 A. L. R. 575. The leading annotation goes on to point out that the fact that there is a state law on the same subject as that covered by a municipal ordinance relating to Sunday observance does not render the ordinance invalid, provided the municipality has authority to legislate in that field and the ordinance is not in conflict with the state enactment. Annotation, 29 A. L. R. 397, 409.

Although there are numerous cases supporting the general rule, the law is not too clear as to when a particular ordinance conflicts with a state statute. For example, there is language in the cases which indicates that by lack of conflict is meant "harmony," City of Clinton v. Wilson, 257 Ill. 580, 586, 101 N. E. 192, 195; the "same direction," Ex parte Johnson, 20 Okla. Cr. 66, 72, 201 P. 533, 536; and that the ordinance does not authorize the doing of any act on Sunday which the general laws of the state have prohibited, City of St. Louis v. Bernard, 249 Mo. 51, 155 S. W. 394.

The case which probably goes furthest in an effort to define the type of conflict which would make an ordinance invalid is the Minnesota case of Power v. Nordstrom, *supra*. This court there took account of nearly all of the other less definitive attempts when it stated (150 Minn. 232, 184 N. W. 969):

"It is elementary that an ordinance must not be repugnant to, but in harmony with, the laws enacted by the legislature for the government of

the state. It cannot authorize what a statute forbids or forbid what a statute expressly permits, but it may supplement a statute or cover an authorized field of local legislation unoccupied by general legislation. Every business and occupation is subject to the reasonable exercise of the police power of the municipality where it is carried on, and, in the exercise of the power, a city or village may regulate that which the state has failed to regulate."

Later Minnesota cases have not altered this test and for the most part have not been faced with a question of what constitutes conflict except in the area of ordinances making certain acts punishable as crimes by punishment which differs from the state standard. The law on that matter is well set out in City of Duluth v. Evans, 158 Minn. 450, 452, 197 N. W. 737, as follows:

"* * * This ordinance and the state law are very much alike, and the one is made in apparent recognition and respect for and of the other. There is not a great difference in the penalties and such difference as exists is doubtless out of necessity so that the prosecutions may be expeditiously disposed of in the municipal court. The ordinance is cooperative and not antagonistic to the general law. Ordinances may be valid when they relate to the same matter as a state law, even though the punishment prescribed in both be not the same. [Citation omitted.] Even if the penalty be less, the ordinance may be, and doubtless is, an important adjunct in preserving the standard of regulation as moulded by the general law. Being of such character it is valid."

See, also, City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779; State v. Weeks, 216 Minn. 279, 12 N. W. (2d) 493; State v. Houston, 210 Minn. 379, 298 N. W. 358; State v. Harris, 50 Minn. 128, 52 N. W. 387, 531; State v. Ludwig, 21 Minn. 202.

Taking into consideration the discussions appearing in 62 C. J. S., Municipal Corporations, § 143b(3); 6 McQuillin, Municipal Corporations (3 ed.) § 23.07; and 1 Antieau, Municipal Corporation Law, § 5.20, together with Minnesota cases, it appears to us that the following general principles can be established:

(a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.

(b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids. Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967, 18 A. L. R. 733.

(c) Conversely, a conflict exists where the ordinance forbids what the statute *expressly* permits. Power v. Nordstrom, *supra.* A part of the holding of that case was that an ordinance requiring the closing of movie theaters on Sunday was not inconsistent with the state Sunday closing statute since the latter, while not specifically forbidding theaters to open, did not expressly permit them to either.

(d) It is generally said that no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute. This rule is illustrated in State v. Clarke Plumbing & Heating, Inc. 238 Minn. 192, 56 N. W. (2d) 667. That case dealt with an ordinance requiring a license and permits to install heating systems. Defendant was denied a permit because his plans were not prepared by a registered engineer, as required by the ordinance. The court held the ordinance valid despite the existence of a similar statute that did not have as broad a coverage as the ordinance, saying that the city could well have determined that greater restriction was necessary in a community of its size. This was consistent with the statute.

Guided by the above standards we now examine the legislative enactments in question. Minn. St. 624.01 to 624.03 (§§ 614.28 to 614.30 prior to renumbering by the revisor of statutes in 1963) provide:

§ 624.01. "The law prohibits the doing on the first day of the week of the certain acts specified in section 624.02, which are serious interruptions of the repose and religious liberty of the community, and the doing of any of such acts on that day shall constitute Sabbath breaking. Under the term 'day,' as used in this section and section 624.02, is included all the time from midnight to midnight."

§ 624.02. "All horse racing, except horse racing at the annual fairs held by the various county agricultural societies of the state, gaming,

and shows; all noises disturbing the peace of the day; all trades, manufacturers, and mechanical employments, except works of necessity performed in an orderly manner so as not to interfere with the repose and religious liberty of the community; all public selling or offering for sale of property, and all other labor except works of necessity and charity are prohibited on the Sabbath day.

"Meals to be served upon the premises or elsewhere by caterers, prepared tobacco in places other than where intoxicating liquors are kept for sale, fruits, confectionery, newspapers, drugs, medicines, and surgical appliances may be sold in a quiet and orderly manner. In works of necessity or charity is included whatever is needful during the day for good order, health, or comfort of the community, including the usual shoe shining service; but keeping open a barber shop or shaving and hair cutting shall not be deemed works of necessity or charity, and nothing in this section shall be construed to permit the selling of uncooked meats, groceries, clothing, boots, or shoes. The games of baseball, football, hockey, basketball, golf, soccer and other contests of athletic skill when conducted in a quiet and orderly manner so as not to interfere with the peace, repose, and comfort of the community, may be played on the Sabbath day."

§ 624.03. "Every person who breaks the Sabbath shall be guilty of a misdemeanor and punished by a fine of not less than $1 nor more than $10 or by imprisonment in the county jail for not more than five days; but it shall be a sufficient defense to a prosecution for Sabbath breaking that the defendant uniformly keeps another day of the week as holy time and that the act complained of was done in such manner as not to disturb others in the observance of the Sabbath."

The pertinent parts of Richfield Ordinance No. 11.10 read as follows:

"An Ordinance Relating to Business Activities on Sundays, Prohibiting Certain of Such Activities, and Providing Penalties for Violations.

"Section 1. *Purpose.* It is determined to be in the interest of the public health, order, convenience and general welfare to observe certain days, hereinafter specified, as days of rest and recreation, free from un-

restricted commercial activity, and it is the purpose of this ordinance to aid in the preservation of such days for such purposes.

"Section 2. *Definitions.* * * *

\* \* \* \* \*

"Subd. 3. 'Restricted item' means any of the following: Clothing and wearing apparel; clothing accessories; footwear; furniture; furs; housewares; household or business or office furnishings and appliances; hardware; tools; paints and varnishes; building materials and supplies; jewelry; cameras; silverware; watches; clocks; luggage; musical instruments; musical recordings; radio receivers; television receivers; phonographs and record and tape players; lawn-mowers; boats; outboard motors; automobile parts; automobile accessories; toys other than novelties and souvenirs; lumber; floor covering; farm implements and machinery; groceries, dairy products (other than ice cream, ice milk and ices); meats and foods, not prepared and served on the premises or served elsewhere by food caterers.

\* \* \* \* \*

"Subd. 5. 'Sunday' means the first day of the calendar week.

"Subd. 6. 'Saturday' means the seventh day of the calendar week.

"Section 3. *Sales Restricted.* No person shall sell a restricted item on Sunday.

"Section 4. *Permitting Sales Prohibited.* No person who is in charge of a business establishment, or a part thereof, whether as the owner, corporate director, corporate officer, manager, supervisor, or otherwise shall permit another person to sell a restricted item in such establishment or part thereof, on Sunday.

"Section 5. *Sales Not Restricted.* The prohibitions contained in Sections 3 and 4 shall not apply to the following:

\* \* \* \* \*

"(2) The sale of groceries, dairy products, meats and other foods in any business establishment at which not more than four persons are regularly engaged in the conduct of the business.

"(3) The sale of automobile parts or accessories at gasoline service

stations where such items are customarily available, or the sale of such items in any isolated sale constituting an emergency.

\* \* \* \* \*

"(8) The sale of a restricted item on Sunday at a place of business which is regularly closed on Saturday.

"Section 6. *Separate Offenses.* Each sale of a restricted item in violation of this ordinance is a separate offense.

"Section 7. *Interpretation.* Subd. 1. This ordinance is not to be construed as permitting any act which is otherwise prohibited by law.

"Subd. 2. If any provision in this ordinance is found to be void, the remaining provisions shall remain valid unless such provisions, standing alone, are incomplete and are incapable of being executed."

Plaintiffs, in an attempt to find a conflict between the two enactments which would meet the test of the Power case, assert that the state law prohibits the sale of all groceries on Sunday while the local ordinance permits grocery stores which regularly employ four persons or less in the conduct of the business to sell groceries on Sunday. Thus plaintiffs maintain that the ordinance "specifically authorizes" what the statute forbids, and that the resulting conflict invalidates the ordinance. A reading of the section of the ordinance in question, § 5(2), reveals no such specific authorization. Defendant village, on the other hand, maintains that all that the ordinance is actually doing is selecting a part of the statute— that prohibiting the sale of groceries—and emphasizing it by making it a violation of a local ordinance also when stores with four or more employees sell groceries on Sunday.

This analysis has some merit. The terms of the statute and ordinance are not irreconcilable. This provision of the ordinance does not permit, authorize, or encourage violation of the statute. It might be termed a complementary regulation which simply fails to make sales of groceries by certain establishments an additional offense under the ordinance. See, Theisen v. McDavid, 34 Fla. 440, 16 So. 321, 26 L. R. A. 234. It is our opinion that the governing body of Richfield, in the exercise of its ordinance-making functions and police powers, decided that it was in the best interest of the municipality under the facts and circumstances here not

to prohibit by ordinance small stores employing four persons or less from selling on Sunday miscellaneous groceries for the convenience, use, health, and general welfare of the people in the community. This it may do, and the failure to create a prohibition as broad as that of the statute does not invalidate the ordinance.

While there are other variances between this ordinance and the statute, it does not appear that they were alleged as conflicts at the trial level, and they are not argued before us on this appeal.

■ Plaintiffs here assert that the Richfield ordinance should be declared invalid because the state legislature has preempted the field of legislation on Sunday observance. Although some cases have confused the two and even used them interchangeably, it is our opinion that preemption and conflict are separate concepts and should be governed by separate doctrines. The preemption doctrine has also been known as the "occupation of the field" concept, and is familiar in drawing the line between state and Federal powers. It is based on the type of reasoning expressed by a California court in People v. Commons, 64 Cal. App. (2d) 925, 930, 148 P. (2d) 724, 727, when it stated:

"* * * [A] state law may fully occupy a particular field of legislation so that there is no room for local regulation, in which case a local ordinance attempting to impose any additional regulation in that field will be regarded as conflicting with the state law, and for that reason void, even though the particular regulation set forth in the ordinance does not directly duplicate or otherwise directly conflict with any express provision of the state law."

There are many cases sustaining and many cases invalidating ordinances in the face of state legislation, and the area as a whole is pervaded with conflicts of authority. See, 37 Am. Jur., Municipal Corporations, § 166; 1 Antieau, Municipal Corporation Law, § 5.22.[1]

The California court in In re Hubbard, 62 Cal. (2d) 119, 128, 41

---

[1] For a good discussion and critique of the problems in this area and their solutions by the California courts, see Haynes, *The State v. The City: A Study in Pre-emption*, 36 So. Calif. L. Rev. 430.

Cal. Rptr. 393, 398, 396 P. (2d) 809, 814, in attempting to create order of the many cases decided on the preemption issue in that state, stated:

"This question [preemption] must be answered in the light of the facts and circumstances surrounding each case. This does not mean that there are no standards which a chartered city or county may apply when attempting to determine its right to legislate in a specific field. Analysis of the many prior decisions on this subject indicates that although the language differs from case to case, the rationale of all have one thing in common, that is, that chartered counties and cities have full power to legislate in regard to municipal affairs unless: (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality."

While the essence of Minnesota cases in the area of preemption has been to follow the type of analysis set forth by the California court, it has nowhere been clearly expressed what factors should be considered in determining whether or not there has been preemption.

The Minnesota law in the area of preemption is limited, and much has to be inferred from the more general holdings of this court. It should first be stated that municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred. Minnetonka Elec. Co. v. Village of Golden Valley, 273 Minn. 301, 141 N. W. (2d) 138; Village of Brooklyn Center v. Rippen, 255 Minn. 334, 96 N. W. (2d) 585. It is also true that a municipality can act to protect the security of the community and that in so doing it is not limited to the things enumerated in the general welfare clause in its charter. Minnetonka Elec. Co. v. Village of Golden Valley, *supra;* State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465; State v.

Morrow, 175 Minn. 386, 221 N. W. 423; Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6. It would therefore seem that, generally stated, the rule would be that once the municipality is granted a charter with a general welfare clause, as the village has been, that clause will be construed liberally to allow effective self-protection by the municipality.

With these broad policies in mind we turn to the narrower question of preemption. In looking at the Minnesota and other cases we should keep in mind four questions: (1) What is the "subject matter" which is to be regulated? (2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern? (3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern? (4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general populace of the state?

The most recent case involving preemption in Minnesota is Minnetonka Elec. Co. v. Village of Golden Valley, *supra,* in which this court stated that while local regulation of building and electrical installations may be valid, a municipality may not require a license of an electrical contractor since he is already licensed by the state. Clearly the subject matter in that case was licensing of electrical contractors, and the reasons for finding preemption were that the legislature had covered the complete subject matter with its regulation, and the adverse effects upon the electrical contractors of the state outweighed the policy of allowing local regulation.

Another recent case dealing with preemption is State ex rel. Sheahan v. Mulally, 257 Minn. 27, 99 N. W. (2d) 892, in which this court stated that although there was a statute regulating disorderly conduct the municipality was not foreclosed from also proscribing such behavior. The legislature had not acted comprehensively on the subject; nor had it expressly indicated that it was a matter of state concern; nor were there adverse effects of local regulation which outweighed the historical regulation of this area by local governments. A case discussed at some length in the Sheahan case was State v. Hoben, 256 Minn. 436, 98 N. W. (2d) 813, involving violation of a traffic ordinance. We recognized in that case

that the legislature had allowed municipalities to regulate traffic but had specified that the statutory provisions be applicable and uniform throughout the state. The court held that the jury trial guaranteed in a prosecution under the statute must be allowed in a prosecution under the ordinance. The subject matter there was clearly traffic regulation, and the provision requiring uniformity and statewide application clearly showed the legislative intent to preempt this field except for the limited local regulation the statute expressly permitted.

A further Minnesota decision is Village of Brooklyn Center v. Rippen, 255 Minn. 334, 96 N. W. (2d) 585, in which this court held a local ordinance requiring the licensing of boats to be invalid. The subject matter there was clearly boat licensing, and the grounds for finding preemption was that the subject matter was of such a nature that there would be unreasonably adverse effects upon the general populace of the state if local licensing were allowed.

One other Minnesota case in this area is State v. The Crabtree Co. 218 Minn. 36, 15 N. W. (2d) 98, in which the court upheld the local regulation of cigarette sales in spite of a state statute covering the matter. The subject matter was obviously cigarette sales, and in that case the fact that another statute expressly allowed cities to regulate cigarette sales disposed of the issue.

Other cases cited by plaintiffs and defendant on this issue are inapplicable inasmuch as they were decided on the question of whether there was a *conflict* with the statute or on some other basis. See, Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967, 18 A. L. R. 733; City of Duluth v. Evans, 158 Minn. 450, 197 N. W. 737; State v. Weeks, 216 Minn. 279, 12 N. W. (2d) 493; State v. Marciniak, 97 Minn. 355, 105 N. W. 965; State v. Harris, 50 Minn. 128, 52 N. W. 387, 531; State v. Ludwig, 21 Minn. 202.

In the case before us the subject matter is clearly regulation of Sunday sales. It will be noted that the legislature did not expressly preclude local regulation of Sunday sales. It is also unlikely that the subject matter is such that local regulation would have unreasonably adverse effects upon the general populace of the state. It should be observed, however, that the varied types of ordinances and, in some places, their absence, in the

different communities in the Twin City metropolitan area have resulted in very unequal or spotty regulation of Sunday sales in a small trade area. The result is that those stores located in areas without any regulation benefit anew as each other suburban community restricts the vendors in its own community.

The other consideration in questions of preemption is whether the state legislature has so fully covered an area as to have made it an area solely of state concern. While this is a fairly close question in the instant case, it would appear that this area of Sunday closing is not one which has been impliedly declared by the legislature to be solely of state concern. This is not the type of legislative enactment which purports to completely dictate the specific regulation of an area as, for instance, the tax and traffic provisions do. Instead, this is a rather complete policy statement by the legislature which the local municipality should be able to shape to its own needs by supplementary ordinances. We find no reversible error here.

■ The third issue raised by plaintiffs is that the trial court erred in not finding that defendant has been guilty of purposeful discriminatory enforcement of the ordinance and should thus be enjoined from such further enforcement. Defendant does not seem to quarrel with the general assertion of plaintiffs that discriminatory enforcement of a law violates the Fourteenth Amendment of the United States Constitution. This issue boils down to a question of fact which must be determined in the first instance by the trial court. Its determination will not be reversed by this court unless clearly erroneous. Rule 52.01, Rules of Civil Procedure. The relevant finding of the trial court reads as follows:

"Certain other stores in Richfield selling items restricted by the terms of the said Richfield ordinance, and items not so restricted, have been open on Sundays and some of said stores have, in violation of the ordinance, sold items on Sundays, the sale of which is prohibited by such ordinance. Such violations occurred both before and after the commencement of this action. Defendant has not by and through its agents, or otherwise, engaged in a course of purposeful discriminatory enforcement of said ordinance against plaintiffs."

In his memorandum the trial court further explained his finding as follows:

"The picture presented did not show strict enforcement of the ordinance. However, it fell short of establishing that there was purposeful discriminatory enforcement against plaintiffs.

"Both plaintiffs and defendant rely upon the statement in *Wade v. City and County of San Francisco,* 82 Cal. App. (2d) 337, 186 P. (2d) 181, as follows:

" 'In each of those cases the distinction between mere laxity of enforcement and intentional or purposeful discrimination is recognized and it is held that while mere laxity of enforcement, although it may result in the unequal application of the law to those who are entitled to be treated alike, is not a denial of equal protection in the constitutional sense, it is otherwise in the case of deliberate or intentional discriminatory enforcement which is a denial of the equal protection guaranteed by the constitution.'

"Here there may have been laxity of enforcement, but no intentional or purposeful discrimination is found. Plaintiffs have failed to prove that the law has been applied with 'purposeful discrimination or an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances.' *Yick Wo v. Hopkins,* 118 U. S. 356. In a proper case plaintiffs should have a remedy against discriminatory enforcement. The cases, starting with *Yick Wo v. Hopkins,* so hold. But while the question is close, and the ordinance has not been strictly enforced, we are not persuaded that there was purposeful discriminatory enforcement against plaintiffs."

This language, as well as that of the memorandum as a whole, reveals a careful consideration of the evidence as it was presented. We do not find sufficient evidence in the record to say that this decision was clearly erroneous, and we are unwilling to substitute our judgment for that of the trial court.

Affirmed.