STATE of Minnesota, Respondent,

v.

**David M. WESTRUM, Appellant.**

**No. CX–85–1370.**

Court of Appeals of Minnesota.

Jan. 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Joseph M. LaBat, Asst. City Atty., Minneapolis, for respondent.

Scott J. Strouts, Barrie S. Schumack, Minneapolis, for appellant.

Heard, considered and decided by LESLIE, P.J. and WOZNIAK, and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

David M. Westrum owns several food-vending booths that he operates at various events across the state. He was licensed to sell food by the Minnesota Department of Agriculture and the Minnesota Department of Health. Twice on August 10 and once on August 11, 1984, Westrum was found operating his booths at the Uptown Art Fair in Minneapolis without a city permit. He was subsequently charged with and convicted under Minneapolis, Minn., Code of Ordinances § 188.100 (1982). We affirm.

## FACTS

The Uptown Art Fair is an annual Minneapolis fair that is sponsored, organized and managed by the Uptown Associates, Incorporated (UAI). The UAI is a private, non-profit organization that was granted a permit to hold the 1984 Uptown Art Fair on August 10, 11, and 12. The permit did not give the UAI the power to receive applications for or allocate spaces to merchants within the area of the fair. However, to avoid having merchants set up booths in the same location, the City required all applicants to go to the UAI to obtain a permit for booth space. UAI's permit also did not give the UAI the power to grant or to receive applications for the permit, or to deny issuance of the permit. However, at least two people were denied a permit because they failed to apply for the permit with the UAI.

Appellant did not apply with the UAI for either the food handlers' permit or for booth space. He did not apply for the food handlers' permit because he believed his state permit was all that was required. He did not apply for booth space because he was told by UAI representatives that only non-profit food vendors would be allocated space. However, Westrum later learned that other vendors were allocated space even though they were not non-profit vendors.

Appellant was arrested and charged with three counts of operating as a food vendor without a short-term food handlers' permit. At trial, the facts were stipulated to and appellant essentially contended that he was not required to have the permit. The trial court found him guilty and this appeal ensued.

## ISSUES

1. Does the ordinance irreconcilably conflict with Minn.Stat. § 284.01–.17?

2. Is the ordinance preempted by Minn. Stat. §§ 284.01–.17?

3. Does the ordinance fall within the exceptions set forth in Minn.Stat. § 28A.065?

4. Is the ordinance unconstitutionally vague or overbroad?

5. Did the City of Minneapolis unlawfully delegate the authority to issue permits to the UAI?

## ANALYSIS

1. It is well established that an ordinance cannot be repugnant to a state statute. *See Power v. Nordstrom,* 150 Minn. 228, 232, 184 N.W. 967, 969 (1921). An ordinance "cannot authorize what a statute forbids or forbid what a statute expressly permits but it may supplement a statute or cover an authorized field of local legislation unoccupied by general legislation." *Id.* As a general rule, conflicts that would render an ordinance invalid exist only when the ordinance and statute both contain terms that are irreconcilable with each other. *Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 352, 143 N.W.2d 813, 816 (1966).

Appellant contends that the ordinance irreconcilably conflicts with Minn.Stat. § 28A.065 (1984). Minn.Stat. § 28A.065 states as follows:

No person whose place of business is a carnival, circus, or fair and who holds a license pursuant to this chapter or chapter 157 shall be required to obtain any additional license or permit pursuant to the provisions of an ordinance or regula-

tion of a political subdivision in order to engage in any aspect of food handling or to operate a restaurant.

This section does not exempt the person from compliance with the provisions of chapters 37 and 38, any sanitation, public health or zoning ordinance, privilege license requirements or other regulation of the fair or political subdivision having jurisdiction over the area in which the carnival, circus, or fair is conducted.

Minneapolis, Minn., Code of Ordinances § 188.110 states as follows:

Permits for the sale of food and drink for a period of less than fourteen (14) days at community celebrations, circuses, and other like and similar occasions, may be issued upon proper application and the payment of a fifty-dollar ($50.00) fee. The operation of itinerant food establishments must be in conformity with the provisions of this chapter.

Pursuant to the ordinance it is unlawful for any person to conduct or operate a food establishment without first obtaining a license.

Appellant contends that the legislature intended to eliminate local licensing. He relies on the strong language in the first paragraph of the statute, which states that "[n]o person * * * shall be required to obtain any additional license or permit * * in order to engage in any aspect of food handling * * *." Appellant claims that the ordinance impermissibly conflicts with the statute because the city is attempting to forbid food vendors from selling without a permit even though the statute expressly authorized vendors to sell food without any local permits.

■ We disagree with appellant. Although the first paragraph of the statute does use very strong language, the second paragraph contains a list of regulations that municipalities may enact concerning food vendors at fairs like the Uptown Art Fair. Included in the list of permissible local regulations is "privilege license requirements." We believe that this exception demonstrates that the legislature realized that there are limited spaces at local fairs and that local governments should be allowed to fill these limited spaces in an orderly fashion. The ordinance works in harmony with the statute to provide an efficient and effective method for the city to organize activities like the Uptown Art Fair. Therefore, we hold that the ordinance does not irreconcilably conflict with the statute.

■ 2. Appellant next contends that the ordinance is preempted by state law. Local regulation will be preempted when the legislature has so completely regulated a field or has indicated that a field is solely a matter of state concern, and the subject matter of the regulation is such that local regulation would have adverse effects upon the general population of the state. *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 143 N.W.2d 813 (1966). Four criteria should be considered when considering an issue of preemption: the subject matter that is being regulated; whether the subject matter has been so fully covered by state law that it has become solely a matter of state concern; whether the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern; and whether the subject matter is of such a nature that local regulation would have an unreasonably adverse effect on the general population of the state. *Id.* at 358, 143 N.W.2d at 820.

Appellant relies on the first paragraph of Minn.Stat. § 28A.085 to argue that the state intended to fully occupy the field of licensing food vendors. Although he recognizes that the statute may allow local regulation of sanitation and health, he argues that any ordinance regulating licensing should be preempted.

We disagree with appellant's contentions. Regulation of food vendors at local fairs is an area in which local governments are particularly interested because local fairs primarily affect the local populace. Also, requiring food vendors to comply with local regulations will not have an unreasonably adverse effect on the state's populace be-

cause the burden imposed on vendors by local legislation is not that great. Finally, although the first paragraph of § 28A.065 does show some intent to fully occupy the field, the second paragraph clearly shows an intent to allow local licensing.

■ As the supreme court stated in *State v. Dailey*, 284 Minn. 212, 214–15, 169 N.W.2d 746, 748 (1969),

[i]t is imperative, if we are to give faithful effect to legislative intent, that the legislature should manifest its preemptive intent in the clearest terms. We can be spared the sometimes elusive search for such intent if it is declared by express terms in the statute. And where that is not done in the enactments of future legislatures, we shall be increasingly constrained to hold that statutes and ordinances on the same subject are intended to be coexistent.

Because we find that the subject matter is not one that requires preemption and because the legislature has not clearly manifested its preemptive intent, we hold that the Minneapolis ordinance is not preempted by state law.

3. Appellant next contends that even if the state statute does not preempt the city ordinance, the ordinance is invalid because it does not fall within the exceptions listed in the second paragraph of § 28A.065. Appellant argues that the permit does not fall within the "privilege license requirement" exception because a "permit" is not a "license." In addition, he argues that even if "permit" and "license" are synonomous, the city's permit is not within the privilege license requirement exception because the permit applies only to food vendors and not to all vendors or merchants.

■ We find appellant's first argument unpersuasive because it relies too heavily on a minor, technical distinction. Although a license and a permit are technically different, the distinction between them is very subtle. *See* 9 E. McQuillin, *Municipal Corporations*, § 26.01a (3d ed. 1978). The terms are frequently used interchangeably. *See State ex rel. State Highway Commission v. Mauney*, 76 N.M. 36, 43, 411 P.2d

1009, 1014 (1966); Black's Law Dictionary 829, 1026 (5th ed.1979). We therefore believe that the ordinance does not fail solely because it uses the word "permit" instead of "license."

Nor are we persuaded by appellant's second argument. We find nothing in the statute that suggests the legislature intended to allow local authorities only to impose privilege license requirements on all vendors and merchants at fairs. Given the strong local interest in controlling local fairs, we will not read such a requirement into the statute. Therefore, we hold that the Minneapolis ordinance is not invalid merely because it uses the term "permit" and applies only to food vendors.

4. Appellant next contends that the ordinance is invalid because when read in conjunction with the statute, the ordinance is vague. It is a well-established principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The enactment violates due process if " [persons] of common intelligence must necessarily guess at its meaning * * *." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). However, there is a presumption that the enactment is constitutional, and it will not be declared void for vagueness unless it "is so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain legislative intent." *Contos v. Herbst*, 278 N.W.2d 732, 746 (Minn.1979).

■ We find that the language of the ordinance is very clear. The Minneapolis ordinance clearly requires persons to obtain a permit if they wish to sell food at a fair. The ordinance clearly states that it is unlawful for a person to conduct or operate a food establishment without obtaining a license. Although appellant apparently believed that the ordinance was overruled by the statute, we believe that appellant's confusion with the state law does not make the city ordinance vague. We therefore hold

that the ordinance is not void for vagueness.

■ 5. Appellant's final contention is that the city improperly delegated the authority to issue the permit to the UAI. Although the city arguably did delegate some authority to the UAI, the city was ultimately responsible for issuing the permits. In a large metropolitan city like Minneapolis, neighborhood street fairs and carnivals are frequent events in the summer. They are often organized and run by neighborhood groups and are designed to bring the neighborhood together. By delegating some authority to organizations such as the UAI, the city furthers the neighborhood spirit that the fairs are intended to foster. Because in the present case the city was ultimately responsible for issuing the permits, we hold that it did not unlawfully delegate its authority to the UAI.

### DECISION

We affirm the trial court in all respects.

Affirmed.