**CITY OF BIRCHWOOD VILLAGE,**
Appellant,

v.

**Josephine Berg SIMES, Respondent.**

No. C7–97–1915.

Court of Appeals of Minnesota.

April 7, 1998.

Frederic W. Knaak, Holstad & Larson, P.L.C., St. Paul, for respondent.

Gregory G. Galler, Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P., Stillwater, for appellant.

Considered and decided by DAVIES, P.J., and KALITOWSKI and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

The City of Birchwood Village appeals from summary judgment in favor of respondent Josephine Simes, a boat owner and resident, arguing that the district court erred when it ruled that state legislation establishing the White Bear Lake Conservation Dis-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

trict (conservation district) preempts any ordinances enacted by the city regarding boat size. Because state legislation establishing the conservation district fully occupies that field of legislation, there is no room for local regulation, and we affirm.

## FACTS

White Bear Lake is located in northeastern Ramsey County and west-central Washington County in Minnesota. The lake is surrounded by five cities: on the eastern side are the cities of Birchwood Village (city), Mahtomedi, and Dellwood, and on the western side is the city of White Bear Lake, as well as White Bear Township. For many years, local homeowners' associations have placed docks at the end of five streets that run directly into the lake. Members of the homeowners' associations place their boats at these docks.

In 1991 the Birchwood City Council adopted regulations governing the use of the docks, including a limitation on the size of boats that could be kept at the dock association slips. The initial regulations enacted in 1992 prohibited boats in excess of eighteen feet in length or six feet in width, but the boat width regulations were amended in 1996 to allow boats up to seven feet wide. Although the city adopted regulations governing boat size, the conservation district has never imposed size restrictions for boats moored or used on the lake.

In 1995 respondent purchased a boat measuring larger than allowed by the city regulations. When the city asked her to remove the boat from the dock, she refused. The city sought an injunction ordering respondent to remove the boat from the dock and prohibiting her from returning it to the dock. Respondent filed a counter-claim, alleging that the city's actions constituted tortious interference with contractual or business relations and defamation. The city moved for summary judgment on all issues.

Respondent argued that the city's regulations were preempted by Minn.Stat. art. VI, § 10.

§§ 103B.651–.691 (1996), which established the conservation district. Respondent argued that the conservation district is the only municipality with authority to regulate the size of boats at docks on the lake. The city countered that it had authority to regulate the size of boats at docks pursuant to Minn. Stat. § 412.221, subd. 12 (1996), which prescribes the powers of city councils.

The district court dismissed respondent's counterclaims and sua sponte granted summary judgment for respondent, ruling that the city's regulations were preempted, as a matter of law, by the statute establishing the conservation district. The city now appeals.

## ISSUE

Did the district court err when it ruled that state law establishing the White Bear Lake Conservation District preempted the city's regulations?

## ANALYSIS

■ We review the grant of summary judgment to determine whether the district court erred in its application of the law. *See Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). Statutory interpretation presents a question of law, which we review de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

■ Absent express preemption, Minnesota courts apply the "occupation of the field" doctrine, to decide if state law impliedly preempts local ordinances. *Mangold Midwest Co. v. Richfield,* 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). Preemption under this doctrine is based on the following reasoning:

[A] state law may fully occupy a particular field of legislation so that there is no room for local regulation, in which case a local ordinance attempting to impose any additional regulation in that field will be regarded as conflicting with the state law, and for that reason void, even though the particular regulation set forth in the ordinance does not directly duplicate or otherwise directly conflict with any express provision of the state law.

*Id.* (quoting *People v. Commons,* 64 Cal. App.2d Supp. 925, 148 P.2d 724, 727 (1944)). To determine when preemption applies, the following factors are considered:

(1) What is the "subject matter" which is to be regulated? (2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern? (3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern? (4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general populace of the state?

*Id.* at 358, 143 N.W.2d at 820.

■ Here, the conflict is between the power of the Birchwood City Council and the conservation district to regulate the size of boats moored to private docks on the lake. Generally, municipalities have no inherent powers; their powers are limited to those expressly conferred by statute or implied as necessary to aid those powers that have been expressly conferred. *Id.* at 357, 143 N.W.2d at 820. But a municipality may act to protect the security of its community and is not limited to the objectives enumerated in the general welfare clause in its charter. *Id.*

Minn.Stat. § 412.221 (1996) enumerates the specific powers of the Birchwood City Council. They include the "power to establish harbor and dock limits and by ordinance regulate the location, construction and use of piers, docks, wharves, and boat houses on navigable waters * * *." *Id.,* subd. 12 (1996).

The statute establishing the conservation district defines "municipality" to include the city of Birchwood, as well as the town of White Bear, the city of White Bear Lake, the city of Mahtomedi, and the city of Dellwood. Minn.Stat. § 103B.651, subd. 4 (1996). The statute also provides for the membership and powers of the conservation district board:

Subdivision 1. **Membership.** (a) The district shall be governed by the board composed of members elected by the governing bodies of the municipalities included in the district. Each municipality shall elect two members.

\* \* \* \*

Subd. 2. **Powers.** \* \* \* the district has the following powers to:

(1) regulate the types of boats permitted to use the lake;

(2) limit the use of motors, including their types and horsepower, on the lake;

(3) regulate, maintain, and police public beaches, public docks, and other public facilities for access to the lake within the territory of the municipalities;

(4) limit by rule the use of the lake at various times and the use of various parts of the lake;

(5) regulate the speed of boats on the lake and the conduct of other activities on the lake to secure the safety of the public and the most general public use;

(6) contract with other law enforcement agencies to police the lake and its shores;

(7) regulate the construction, installation, and maintenance of permanent and temporary docks and moorings consistent with federal and state law; \* \* \*

Minn.Stat. § 103B.661, subds. 1, 2 (1996).

The district court determined that the statute creating the conservation district preempts any regulations imposed by the city. The court reasoned that the city did not have the authority to enact an ordinance regulating the size of boats moored to private docks on the lake because it surrendered that authority to the conservation district. Specifically, the district court relied on (1) the conservation district's power to "regulate the ·construction, installation, and maintenance of permanent and temporary docks and moorings"; (2) the requirement that the conservation district's governing board be composed of two members from each municipality, including the city of Birchwood Village; and (3) the purpose of the conservation district is to enact and enforce uniform regulations for the users of White Bear Lake. The well-reasoned memorandum of the district court is in full accord with existing law.

The city argues that because the legislation creating the conservation district does not expressly preempt local regulation, the district court erred. The city urges this court to adopt a narrow reading of the con-

servation district's authority, based on language in *State v. Dailey,* where the supreme court sought explicit language before finding intent to preempt:

We are averse \* \* \* to hold that the legislature contemplates its own regulation to exclude municipal regulation, without most clear manifestation of such intent. It is imperative, if we are to give faithful effect to legislative intent, that the legislature should manifest its preemptive intent in the clearest terms. We can be spared the sometimes elusive search for such intent if it is declared by express terms in the statute. And where that is not done in the enactments of future legislatures, we shall be increasingly constrained to hold that statutes and ordinances on the same subject are intended to be coexistent.

*Id.,* 284 Minn. 212, 214–215, 169 N.W.2d 746, 748 (1969). Specifically, the city argues that the statutory authority the district court relied on in Minn.Stat. § 103B.661, subd. 2(7), does not apply because it addresses the "construction, installation and maintenance" of docks, but not the size of boats that can be moored at the dock.

*Dailey* is distinguishable from this case. *Dailey* involved the existence of a municipal ordinance making prostitution a misdemeanor, and a statute making it a gross misdemeanor. *Id.* at 214, 169 N.W.2d at 748. The court ruled that the state statute proscribing prostitution did not preempt the local ordinance, despite the differences in procedure and penalty. *Id.* The court reasoned that within the past decade, the legislature had moved on several fronts to assist, but not replace, local government in addressing problems created by modern urban life. *Id.* Given that both the statute and the ordinance were meant to achieve the same goal—the elimination of prostitution—the court refused to find that the state legislation had preempted the local ordinance. *Id.*

Unlike the facts in *Dailey,* the municipalities surrounding White Bear Lake have chosen to confer authority on the conservation district to make decisions regarding the management of the lake. The powers granted to the board under Minn.Stat. § 103B.661, subd. 2, are extensive and include the author-

ity to regulate "the conduct of other activities on the lake to secure the safety of the public" and the "types of boats permitted to use the lake." Furthermore, the governing board includes elected officials from each municipality, including the city.

The city next argues that the statute does not explicitly give the conservation district the authority to regulate the "use" of private docks; whereas the enabling statute for the city council grants it the power to regulate the "location, construction, and use" of docks. Such a cramped reading of the board's authority is unwarranted; when the statute governing the conservation district is read as a whole, it represents an effort by the local municipalities to cede authority to the board to regulate all manner of activities affecting the lake. Unlike the facts in *Dailey*, where the state law and local ordinance were meant to eradicate the same problem, here, the city's ordinance is inconsistent with the principle of permitting the conservation district to establish uniform regulations governing activities on White Bear Lake.

Our reading of the statute is consistent with the principles of preemption enunciated in *Mangold*. The broad range of powers delegated to the conservation district is an effort by the state to preempt local authority and control. The enabling statute still provides the municipalities with a voice in issues relating to the lake because the governing board comprises elected officials from the surrounding municipalities. Furthermore, permitting each municipality to enact different regulations regarding the size of boats that may be moored to private docks would have an adverse effect on the public. For example, a boat that is permitted at one dock may not be permitted at a dock across the lake. Finally, regulations regarding the *use* of docks regulate, in effect, the types of boats that are permitted to use the lake—an area of regulation that the statute explicitly confers on the conservation district.

## DECISION

The district court properly granted summary judgment.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

This is an inappropriate case for application of "occupation of the field" preemption as contemplated by *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). To start with, the state legislation at issue simply grants to the White Bear Lake Conservation District the power to regulate activities on White Bear Lake. The legislature itself created no substantive regulation, and the Conservation District has not exercised power in any way relevant to the size of boats that may be docked in Birchwood Village. In effect, the majority rules that there can be preemption by a void, that a field may be fully "occupied" by an empty vessel. The majority suggests, too, that there is in this case "added regulation" by Birchwood Village where the city's regulation is added to nothing.

"Occupation of the field" under *Mangold* does not mean the taking away of power; it means, rather, "squeezed out" by the action of a superior authority. Article 1, Section 10, of the United States Constitution is revealing on this point. That section illustrates how power can be taken away from a subordinate government, even in the absence of relevant substantive law enacted by the superior government.

No state shall enter into any treaty, alliance or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; * * *.

* * * *

No state shall, without the consent of Congress, lay any duty of tonnage, keep troops or ships of war in time of peace, enter into any agreement or compact with another state or with a foreign power, or engage in war, unless actually invaded or in such imminent dangers as will not admit of delay.

When establishing the White Bear Lake Conservation District, the legislature included no comparable provision granting exclusivity of power to the Conservation District.

There is, in addition, nowhere in the arguments or briefs of the parties, or in the opinion of the majority, a suggestion that the Birchwood Village ordinance conflicts with or overlaps any substantive rule promulgated by the White Bear Lake Conservation District. That leaves the field, at least for the time being, to the city, where it has always been.

Finally, the regulation involved in this case is fundamentally a local regulation that has no effect on the rest of White Bear Lake. At issue is the size of boats that may be permanently docked in Birchwood Village. At oral argument it was pointed out that transient boat docking was not involved; thus the issue of what size boat can be used on White Bear Lake generally was not at issue. The only concerns addressed by the Birchwood Village ordinance are potential windstorm harm to the marina from larger boats, crowding, sight-lines, and other totally local concerns.

Until such time as the White Bear Lake Conservation District acts, all ordinary municipal powers to regulate remain with the City of Birchwood Village.