JOHNSON, Judge (dissenting)
Under well-established caselaw, a municipal ordinance conflicts with, and thus is preempted by, a state statute if "the ordinance forbids what the statute expressly permits." Mangold Midwest Co. v. Village of Richfield , 274 Minn. 347, 143 N.W.2d 813, 816 (1966). In this case, the City's minimum-wage ordinance forbids a large employer from paying an hourly wage of between $ 9.86 and $ 11.24, while the state minimum-wage statute expressly permits a large employer to pay an hourly wage of between $ 9.86 and $ 11.24. Thus, the City's minimum-wage ordinance forbids what the state statute expressly permits. Therefore, the City's minimum-wage ordinance conflicts with, and thus is preempted by, the state minimum-wage statute. Because the majority concludes *275 otherwise, I respectfully dissent from the opinion of the court.
A.
In Minnesota, there are three doctrines by which it may be determined that a state statute preempts a municipal ordinance: (1) express preemption, which applies if "the legislature expressly declared that state law shall prevail" over municipal ordinances, (2) conflict preemption, which applies if a municipal ordinance "conflicts with state law," and (3) field preemption, which applies if "the Legislature has comprehensively addressed the subject matter such that state law now occupies the field." Bicking v. City of Minneapolis , 891 N.W.2d 304, 313 n.8 (Minn. 2017) (quotation and citations omitted). Graco's primary argument in this appeal is based on the second doctrine.
Under the second doctrine, conflict preemption, a municipal ordinance is in conflict with a state statute in three circumstances: "A conflict exists between state law and a municipal regulation [1] when the law and the regulation 'contain express or implied terms that are irreconcilable with each other,' [2] when 'the ordinance permits what the statute forbids,' or [3] when 'the ordinance forbids what the statute expressly permits.' " Id. at 313 (quoting Mangold , 143 N.W.2d at 816 ). This three-part test is derived from the supreme court's seminal Mangold opinion, which stated three "general principles" concerning conflicts between municipal ordinances and state statutes:
(a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.
(b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids. Power v. Nordstrom , 150 Minn. 228, 184 N.W. 967, 18 A.L.R. 733.
(c) Conversely, a conflict exists where the ordinance forbids what the statute expressly permits. Power v. Nordstrom , supra . A part of the holding of that case was that an ordinance requiring the closing of movie theatres on Sunday was not inconsistent with the state Sunday closing statute since the latter, while not specifically forbidding theatres to open, did not expressly permit them to either.
143 N.W.2d at 816-17. The three-part test is stated in the disjunctive; if any one part of the three-part test is satisfied, a municipal ordinance is preempted by a state statute. See Bicking , 891 N.W.2d at 313.
The third part of the three-part conflict-preemption test, which is based on the third Mangold principle, is satisfied in this case. The analysis is simple and straightforward. The City's minimum-wage ordinance provides, "Large businesses shall pay a wage of no less than the hourly rates set forth herein," and "[o]n July 1, 2018, the hourly wage shall be eleven dollars and twenty-five cents ($ 11.25)." Minneapolis, Minn., Code of Ordinances (MCO) § 40.390(b)(2) (2018). By requiring a large business to pay an hourly wage of no less than $ 11.25, the City's ordinance forbids a large business from paying an hourly wage of $ 11.24 or less. Meanwhile, the state statute provides that "every large employer must pay each employee wages at a rate of at least ... the rate established under paragraph (f)," which presently is $ 9.86. Minn. Stat. § 177.24, subd. 1(b)(1)(iv) (2018) ; see also id. , subd. 1(f) ; Minn. Dep't of Labor & Industry, Minnesota's Minimum Wage Laws , https://www.dli.mn.gov/sites/default/files/pdf/minimum_wage.pdf (last visited Feb. 25, 2019) (hereinafter Minn. Dep't of Labor & Industry website). By requiring a large employer to pay an hourly wage of at least $ 9.86, the state *276 statute expressly permits a large employer to pay an hourly wage of $ 9.86 or more. Thus, the City's minimum-wage ordinance forbids what the state statute expressly permits-hourly wages of between $ 9.86 and $ 11.24 for employees of large businesses and large employers.[4]
It appears that only one other state court has addressed the precise issue that is presented in this appeal, and that court concluded that a local minimum-wage ordinance conflicted with a state minimum-wage statute. In Kentucky Restaurant Ass'n v. Louisville & Jefferson County Metro Gov't , 501 S.W.3d 425 (Ky. 2016), the Kentucky Supreme Court applied longstanding precedent that " '[a]n ordinance ... cannot forbid what a statute expressly permits.' " Id. at 428 (alteration in original) (quoting City of Harlan v. Scott , 290 Ky. 585, 162 S.W.2d 8, 9 (1942) ). The court considered whether a local ordinance that "require[d] businesses to pay workers a higher wage than the statutory minimum" was in conflict with the state minimum-wage statute. Id. The court easily concluded that the local ordinance conflicted with the state statute because "what the statute makes legal, the Ordinance makes illegal and, thus, prohibits what the statute expressly permits." Id. This court should answer the same question in the same manner.
B.
The majority opinion applies the third part of the three-part conflict-preemption test in a manner that is inconsistent with the applicable supreme court caselaw.
As an initial matter, it is important to emphasize that the three-part conflict-preemption test is stated in the disjunctive because the three parts are separated by the word "or." See Bicking , 891 N.W.2d at 313. Accordingly, the existence of a conflict under any one part of the three-part test is a sufficient basis for the conclusion that a state statute preempts a municipal ordinance. For example, in Bicking , the supreme court found conflicts under the second and third parts of the test but not the first part, but the supreme court nonetheless concluded that the proposed municipal ordinance would be preempted by the state statute. Id. at 315. In this case, the majority opinion states that Graco has not established a conflict under the first and *277 second parts of the three-part test. Supra at 268-69, 270. That analysis is unnecessary because Graco does not argue that there is a conflict under the first or second parts of the three-part test. It is irrelevant whether Graco has established a conflict under the first or the second parts because Graco has established a conflict under the third part.
To the extent that the majority opinion focuses on the third part of the three-part test, it reasons that Graco cannot prevail because the state minimum-wage statute "is a prohibitive statute rather than a permissive one." Supra at 268. The majority opinion elaborates by stating that the state statute "does not permit an employer to pay the minimum wage, but rather prohibits an employer from paying less than the minimum wage." Supra at 268. This reasoning is unpersuasive because there is no practical difference between a statement that an employer may pay a wage of at least the minimum wage, a statement that an employer must pay a wage of at least the minimum wage, and a statement that an employer must not pay a wage below the minimum wage. There are various ways of using language to express state law, and the third part of the three-part conflict-preemption test does not require that any particular type of language or any "magic words" be used in the expression of what state law permits.
Indeed, the majority's reasoning is inconsistent with the applicable supreme court caselaw, which focuses on the practical effect of a state statute, without regard for the nature of the language used in the statute. For example, in Lewis ex rel. Quinn v. Ford Motor Co. , 282 N.W.2d 874 (Minn. 1979), the supreme court reasoned that a state statute expressly permitted what a municipal ordinance forbade even though the state statute did not use permissive language. Id. at 876-77.[5] Similarly, in Bicking , the supreme court reasoned that a state statute that uses "mandatory" language effectively "forbids" a municipality from doing the opposite. 891 N.W.2d at 315 (quoting Minn. Stat. § 471.44, subd. 1 (2016) ). These supreme court opinions show that it is immaterial whether the legislature chooses to express state law in terms of what a person "may," "must," or "must not" do. A state statute may expressly permit something even without using "permissive" language. By providing that "every large employer must pay each employee wages at a rate of at least" the statewide minimum wage, see Minn. Stat. § 177.24, subd. 1(b)(1)(iv) (emphasis added), the state minimum-wage statute expressly permits an employer to pay any wage that is equal to or greater than the statewide minimum wage.
The majority opinion makes a partial concession by stating, "At best, an argument can be made that MFLSA impliedly permits employers to pay employees the legislatively set minimum wage." Supra at 269 (emphasis added). A supreme court opinion illustrates that the state minimum-wage statute does more than impliedly permit wages that are lower than the City's minimum wages. In Power v. Nordstrom , 150 Minn. 228, 184 N.W. 967 (1921), the owner of a movie theater challenged a municipal ordinance that prohibited the showing of motion pictures on Sundays. Id. at 968. The supreme court concluded that the municipal ordinance was not in conflict with any state statute because there was no state statute whatsoever regulating the *278 showing of motion pictures on Sundays. Id. at 969. There was only a state statute that required certain businesses to be closed on Sundays, but that statute omitted any mention of movie theaters and, thus, did not apply. Id. (citing Minn. Stat. § 8753 (1913)). The supreme court stated, "By failing to prohibit such exhibitions the Legislature has impliedly sanctioned them, while ... the ordinance expressly prohibits them." Id. (emphasis added). The supreme court explained further as follows:
There can be no conflict between a statute and an ordinance where there is no statute covering the subject-matter of the ordinance. Such is the case here. The statute is silent upon the subject of the exhibition of motion pictures on Sundays. It does not prohibit their exhibition. Neither does it expressly permit it as it does the playing of baseball on Sunday between certain hours. By refraining from legislating on the subject and by authorizing villages not only to regulate the business, but to refuse to grant licenses and so prevent such exhibitions, the Legislature has treated the whole matter as one properly within the domain of the police power of villages.
Id. In the present case, in contrast, state law is not silent. There is a state statute regulating the same subject matter that is regulated by the City's minimum-wage ordinance: the state minimum-wage statute. See Minn. Stat. § 177.24, subd. 1. In light of Power , it must be conceded that the state minimum-wage statute expressly -not impliedly -permits an employer to pay any wage that is equal to or greater than the statewide minimum wage.
Even if the majority were correct that permissive language is required, the City's ordinance still would be in conflict with the state statute to the extent that the two laws provide different minimum wages for new employees who are younger than 20 years old. The state statute provides that, "during the first 90 consecutive days of employment, an employer may pay an employee under the age of 20 years a wage" that is lower than the generally applicable minimum wage. Id. , subd. 1(c) (emphasis added). At present, that minimum wage is $ 8.04 per hour. See id. , subd. 1(f) ; Minn. Dep't of Labor & Industry website, supra . In contrast, the City's ordinance provides a minimum wage for the first 90 days of employment of an employee under the age of 20 that is 85 percent of the City's otherwise applicable minimum wage, so long as the employee "is employed in a city-approved training or apprenticeship program." MCO § 40.390(d). At present, that minimum wage is $ 9.60 per hour for large businesses and $ 8.75 per hour for small businesses. See MCO § 40.390(d); see also id. § 40.390(b), (c). The two laws are in conflict to the extent that there is a difference between the statewide minimum wage of $ 8.04 and the City's higher minimum wages. The majority opinion does not attempt to explain why the indisputably permissive language of section 177.24, subdivision 1(c), does not "expressly permit" what the City's ordinance forbids, thereby giving rise to a conflict under the third part of the three-part conflict-preemption test.
The majority opinion also affirms the district court because the state statute does not "expressly free an employer from local minimum-wage regulation." Supra at 269. This reasoning echoes the district court's statement that "no conflict exists where local regulations impose additional restrictions above the state restrictions, as long as the State has not indicated that local governments should not regulate in that area ." (Emphasis added.) Both of these statements are erroneous because the conflict-preemption test is not concerned with whether the state has expressly *279 stated that a municipal ordinance is preempted. That is the central concept of the doctrine of express preemption, which operates if " 'the legislature has expressly declared that state law shall prevail over municipal regulation.' " Jennissen v. City of Bloomington , 913 N.W.2d 456, 459 (Minn. 2018) (quoting Bicking , 891 N.W.2d at 313 n.8 ). But the absence of an express-preemption provision does not imply the absence of a conflict. The majority and the district court have conflated two separate preemption doctrines.
The majority opinion also reasons that the City's minimum-wage ordinance is not in conflict with the state minimum-wage statute because a different state statute alludes to the possibility of a municipal minimum-wage ordinance. Supra at 269. The other state statute is a definitional statute that defines the term "noncompetitive employment," as that term is used in section 268A.07, which governs federally subsidized vocational-rehabilitation programs for disabled persons by referring to the wage rate "specified in the applicable state or local minimum wage law." See Minn. Stat. § 268A.01, subd. 15. The other state statute apparently is intended to conform to federal law, which defines the term "competitive integrated employment" using similar language. See 29 U.S.C. § 705(5) (2018). In any event, by referring to "the applicable state or local minimum wage law," section 268A.01, subdivision 15, recognizes the existence of a "local minimum wage law" only if it is "applicable." That condition is not satisfied in this case. Section 268A.01, subdivision 15, does nothing to resolve the conflict between the City's minimum-wage ordinance and the state minimum-wage statute. Because of the conflict between the City's minimum-wage ordinance and the state minimum-wage statute, the City's ordinance is not "applicable."
C.
The district court also erred to the extent that it expressed an additional reason for upholding the City's ordinance, a reason that has not been adopted by the majority opinion. The district court stated that there is no conflict in this case because "the ordinance is merely additional and complementary to or in aid and furtherance of the statute." In support of this reasoning, the district court cited Mangold 's fourth principle, not the third principle, which is the legal basis of Graco's primary argument. See Mangold , 143 N.W.2d at 817. The fourth Mangold principle is, in essence, the obverse of the first three Mangold principles. The first, second, and third Mangold principles describe the circumstances in which a municipal ordinance conflicts with a state statute, and the fourth Mangold principle describes the circumstance in which a municipal ordinance does not conflict with a state statute. See Bicking , 891 N.W.2d at 315 ("Given that the proposed [ordinance] would expressly prohibit what [a state statute] permits ... we cannot conclude that the proposed [ordinance] is 'in harmony with' state law." (quoting Power , 184 N.W. at 969 )). The fourth Mangold principle is not, by itself, a criterion for determining whether a municipal ordinance conflicts with a state statute.
D.
In light of the fact that Minnesota's minimum wages are higher than the federal minimum wage of $ 7.25, see 29 U.S.C. § 206(a)(1)(C) (2018), one may wonder why a Minnesota city should not be allowed to set minimum wages that are higher than the statewide minimum wages.
The primary reason is that a federal statute expressly allows states to set minimum wages that are higher than the federal *280 minimum wage. See 29 U.S.C. § 218(a) (2018). There is no corresponding state statute in Minnesota that expressly allows municipalities to set minimum wages that are higher than the statewide minimum wages.
A secondary reason is that the relationship between the federal government and the states is fundamentally different from the relationship between a state and the municipalities within the state. "A municipality is merely a department of the state, a political subdivision created as a convenient agency for the exercise of such governmental powers as may be entrusted to it." Monaghan v. Armatage , 218 Minn. 108, 15 N.W.2d 241, 243 (Minn. 1944). Accordingly, "municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred." Mangold , 143 N.W.2d at 820 ; see also State v. Kuhlman , 729 N.W.2d 577, 580 (Minn. 2007) ; Country Joe, Inc. v. City of Eagan , 560 N.W.2d 681, 683 (Minn. 1997). Because a municipality's powers are derived from the state, "state law may limit the power of a city to act in a particular area." City of Morris v. Sax Investments, Inc. , 749 N.W.2d 1, 6 (Minn. 2008) (citing Mangold , 143 N.W.2d at 819-20 ). One such limitation is that "a city cannot enact a local regulation that conflicts with state law." Id. In essence, the doctrine of conflict preemption ensures that laws enacted by political subdivisions of the state are not in conflict with laws enacted by the state itself. This is true even with respect to a home-rule charter city. See, e.g. , Bicking , 891 N.W.2d at 312-15 ; Kuhlman , 729 N.W.2d at 579-84.
In sum, I would conclude that the City's minimum-wage ordinance is in conflict with the state minimum-wage statute and, thus, is preempted by it. For that reason, I would reverse the judgment of the district court.

The same analysis leads to the same result with respect to small businesses and small employers. The City's minimum-wage ordinance provides that small businesses shall pay a wage of no less than $ 10.25, thereby forbidding a small business from paying an hourly wage of $ 10.24 or less. MCO § 40.390(c)(1). The state minimum-wage statute provides that "every small employer must pay each employee at a rate of at least ... the rate established under paragraph (f)," which presently is $ 8.04, thereby expressly permitting a small employer to pay an hourly wage of $ 8.04 or more. Minn. Stat. § 177.24, subd. 1(b)(2)(iv) ; see also id. , subd. 1(f) ; Minn. Dep't of Labor & Industry website, supra . Thus, the City's minimum-wage ordinance forbids what the state statute expressly permits-hourly wages of between $ 8.04 and $ 10.24 for employees of small businesses and small employers.
Conflicts also may arise from the fact that the two laws draw different distinctions between large and small businesses and large and small employers. For example, the City's ordinance defines "large business" to mean an employer with more than 100 employees, MCO § 40.330, while the state statute defines "large employer" to mean "an enterprise" with annual gross sales of $ 500,000 or more, Minn. Stat. § 177.24, subd. 1(a)(1). Similarly, conflicts may arise from the fact that the state statute provides for lower minimum wages for employees under the age of 20 during the first 90 consecutive days of employment, id. , subd. 1(c) ; employees under the age of 18, id. , subd. 1 (e); and certain employees of hotels and motels, lodging establishments, and resorts, id. , subd. 1(d).

The applicable state statute provided, "It is a defense to a complaint or action brought under this chapter that the person bringing the complaint or action suffers from a disability which in the circumstances poses a serious threat to the health or safety of the disabled person or others." Minn. Stat. § 363.02, subd. 5 (1976).