**STATE of Minnesota, Appellant,**

**v.**

**Daniel Alan KUHLMAN, Respondent.**

No. A06–568.

Supreme Court of Minnesota.

April 5, 2007.

Lori Swanson, Attorney General, Saint Paul, MN, Mary Ellen Heng, Minneapolis, MN, for Appellant.

Howard I. Bass, Bass & Peck, PLLC, Burnsville, MN, for Respondent.

Faison T. Sessoms, Jr., Minnesota Association of Criminal Defense Lawyers, Minneapolis, MN, for Amicus Group.

## OPINION

HANSON, Justice.

In September 2004, the Minneapolis City Council enacted Minneapolis Code of Ordinances sections 474.620 to 474.670, which authorized photo enforcement of traffic control signals. The Minneapolis police began enforcing the new ordinance in July 2005, and on August 11, 2005, one of the cameras photographed a car as it failed to stop at a red light at the intersection of West Broadway Avenue and Lyn-

dale Avenue North. The Minneapolis Police Department mailed a citation to the registered owner of the car, respondent Daniel Alan Kuhlman, for violating the ordinance. Kuhlman challenged the ordinance, arguing that it conflicted with state law and violated the due process rights of registered owners. The district court granted Kuhlman's motion to dismiss without reaching the constitutional issues, holding that the ordinance conflicted with state law. The court of appeals affirmed the dismissal. *State v. Kuhlman*, 722 N.W.2d 1, 2 (Minn.App.2006). We affirm.

Ordinance section 474.640 penalizes an owner of a motor vehicle whose car is photographed running a red light: "If a motor vehicle is operated in violation of section 474.630 [running a red light] and the violation is detected by a recorded image taken by an automated traffic law enforcement system, *the owner* of the vehicle or the lessee of the vehicle is guilty of a petty misdemeanor." Minneapolis, Minn., Code art. 1, § 474.640 (2004) (emphasis added). The ordinance further provides, in section 474.660 entitled "Evidence," that

(a) In the prosecution of a violation, as set forth by section 474.640, captured by an automated traffic law enforcement system, prima facie evidence that the vehicle described in the citation was operated in violation of this section, together with proof that the defendant was at the time of such violation the owner or lessee of the vehicle, shall constitute in evidence a rebuttable presumption that such owner or lessee was the person who committed the violation. The presumption shall be rebutted if the owner or lessee:

(1) Provides a sworn affidavit delivered by United States mail to the city or agency that he or she was not the owner or lessee of the vehicle at the time of the alleged violation and pro-

vides the name and current address of the person operating the motor vehicle at the time of the violation; or

(2) Submits a copy of a police report showing the vehicle had been reported as stolen in a timely manner before the date of the violation.

(b) If the city or agency finds that the person named in the citation was not operating the vehicle at the time of the violation or receives evidence under paragraph (a)(1) of this section identifying the person driving the vehicle at the time of the violation, the city or agency shall issue a citation to the identified driver through the United State mail, no later than fourteen (14) days after receipt of this information.

Minneapolis, Minn., Code art. 1, § 474.660 (2004).

Section 660(a)(1) suggests that an owner will remain liable, even if he or she provides the name of another person who operated the vehicle, unless the owner also proves that he or she was not the owner at the time of the alleged violation. But an affidavit submitted by Minneapolis police in response to Kuhlman's motion to dismiss states that police will not issue a citation to both the vehicle owner and the person the vehicle owner identifies as the driver, and acknowledges that courts cannot convict both the owner and driver of the same violation. At oral argument, the state further explained that if a vehicle owner identifies another person as the driver, the ordinance charge against the owner would be dismissed and the driver would be charged, but the driver would not be charged under the ordinance because the ordinance only provides for owner liability, not driver liability. Instead, the driver would be charged under the Minnesota Traffic Regulations ("the Act"), Minn. Stat. ch. 169 (2006), which imposes liability

on motor vehicle drivers for red-light violations. *See* Minn.Stat. § 169.06, subds. 4(a), 5(a) (2006).

The Act also requires that its provisions "shall be applicable and uniform throughout this state and in all political subdivisions and municipalities." Minn.Stat. § 169.022 (2006). The Act does not provide owner liability for traffic light violations.

The district court dismissed the state's case against Kuhlman, deciding that the Minneapolis ordinance conflicts with the Act. The district court reasoned that the ordinance and the Act cover the same subject matter but that the Minneapolis ordinance provides fewer "due process protections" than are guaranteed to vehicle owners who are prosecuted under the Act. The Minnesota Court of Appeals affirmed the district court, reasoning that (1) an owner-liability ordinance would impede state-wide uniformity and therefore conflicts with the Act; and (2) because the ordinance actually seeks to penalize drivers, rather than owners, it again conflicts with the statute because the ordinance imposes a lesser burden of proof on the state. *Kuhlman,* 722 N.W.2d at 6–8.

█ The question before us is very narrow, whether the Act, and specifically Minn.Stat. §§ 169.06 and 169.022, preempt the Minneapolis ordinance. This is a question of law that we review de novo. *Peterson v. BASF Corp.,* 675 N.W.2d 57, 69 (Minn.2004), *vacated and remanded on other grounds,* 544 U.S. 1012, 125 S.Ct. 1968, 161 L.Ed.2d 845 (mem.) (2005).

█ Generally, "municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred." *Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 357, 143 N.W.2d

813, 820 (1966). Minneapolis is a home-rule-charter city with a general welfare clause, and as such has some power to enact traffic regulations, but those traffic regulations are not valid if they are in conflict with state law. *See* Minn.Stat. § 410.015 (2006); *State v. Sugarman,* 126 Minn. 477, 479, 148 N.W. 466, 467 (1914).

█ To consider whether the ordinance conflicts with the Act, we begin with Minn.Stat. § 169.022, which imposes a uniformity requirement on traffic regulations throughout the state:

> The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein.

We have held that this "provision requiring uniformity and statewide application clearly showed the legislative intent to preempt this field except for the limited local regulation the statute expressly permitted." *Mangold,* 274 Minn. at 359, 143 N.W.2d at 821; *see also Duffy v. Martin,* 265 Minn. 248, 252, 121 N.W.2d 343, 346 (1963) ("In order to provide uniformity in traffic regulations throughout the state, our legislature has prohibited the enactment of ordinances by municipalities in conflict with state statutes, at least since 1911, except where expressly authorized." (footnote omitted)). But we have further held that even though the state has preempted the field of traffic law, " 'no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute.' " *City of St. Paul v. Olson,* 300 Minn. 455, 456, 220 N.W.2d 484, 485 (1974) (quoting *Mangold,* 274 Minn. at 352, 143 N.W.2d at 817). If the ordinance covers specifically what the statute covers gener-

ally, it does not conflict with the statute. *Id.* at 457, 220 N.W.2d at 485.

We have applied the preemption doctrine in the context of traffic regulations in three principal cases, *Olson, Duffy*, and *State v. Hoben,* 256 Minn. 436, 98 N.W.2d 813 (1959). In *Olson,* the defendant, charged with violating a Saint Paul ordinance prohibiting unreasonable acceleration, challenged the ordinance on the ground that it conflicted with state law. 300 Minn. at 455–56, 220 N.W.2d at 484–85. We determined that the ordinance did not conflict with state law because state law contained a general prohibition against careless driving and unreasonable acceleration was one form of careless driving. *Id.* at 456–57, 220 N.W.2d at 485. Because the ordinance covered specifically what the statute covered generally, we held that the ordinance did not conflict with state law. *Id.* at 457, 220 N.W.2d at 485.

■ In *Duffy,* a district court had given jury instructions in a civil action relating to the actions drivers must take before moving a parked car. 265 Minn. at 251–52, 121 N.W.2d at 345–46. The state statute required that the person should not move a vehicle " 'unless and until such movement can be made with reasonable safety.' " *Id.* at 251, 121 N.W.2d at 346. The Minneapolis ordinance used the same standard, but also required the person to give a hand signal. *Id.,* 121 N.W.2d at 346. We held that the Minneapolis ordinance was invalid because it "adds a requirement that is absent from the statute." *Id.* at 254–55, 121 N.W.2d at 347–48. We emphasized that "[t]he purpose of uniformity required by our statutes is to enable a driver of a motor vehicle to proceed in all parts of the state without the risk of violating an ordinance with which he is not familiar." *Id.* at 255, 121 N.W.2d at 348.

In *Hoben,* the defendant was convicted without a jury of violating an Edina ordinance for driving an automobile while intoxicated. 256 Minn. at 436, 98 N.W.2d at 814. The Edina city charter allowed for trial without a jury for ordinance violations. *Id.* at 436, 98 N.W.2d at 814. A statute also prohibited driving while intoxicated, making it a criminal offense and thus affording a defendant the right to a jury trial. *Id.* at 437 & n. 2, 98 N.W.2d at 815 & n. 2. A related statute also provided a presumption of innocence, requiring that the state prove guilt beyond a reasonable doubt, and provided protection against double jeopardy. *Id.* at 438, 98 N.W.2d at 815. We noted that although the legislature favored concurrent jurisdiction over the issue of driving under the influence, "[i]t would be a strange anomaly for the legislature to define a crime, specify the punishment therefor, provide that its application shall be uniform throughout the state, and then permit a municipality to prosecute that crime as a civil offense." *Id.* at 444, 98 N.W.2d at 818–19. We concluded that the municipality was required in any prosecution for driving under the influence, "to insure uniformity of treatment" by "afford[ing] the defendant all [of] the protection[s] of criminal procedure[,] including the right of trial by jury and immunity from double punishment." *Id.* at 444, 98 N.W.2d at 819.

■ Overall, our jurisprudence related to preemption and conflict in the context of traffic violations can be distilled into four main points of law: (1) state law preempts the field of traffic law except for that which is expressly permitted by state statute; (2) no conflict exists when an ordinance is merely additional and complementary to a state law and covers specifically what the statute covers generally; (3) municipalities must provide the same procedural protections as the state when prosecuting offenses that are covered by an ordinance and a statute; and (4) a munici-

pality may not prohibit by ordinance conduct that is not prohibited by statute.

■ Because the Act generally preempts municipal traffic law, we first address whether the Act expressly authorizes the ordinance. Minnesota Statutes § 169.04(a)(2) (2006) expressly authorizes a city to regulate "traffic by means of police officers or traffic-control signals." The state argues that this section authorizes Minneapolis to enact the ordinance.

■ Minnesota Statutes § 169.01, subd. 27 (2006), defines "police officer" as "every officer authorized to direct or regulate traffic or to make arrests for violations of traffic rules." Minnesota Statutes § 169.01, subd. 42 (2006), defines "traffic control signal" as "any device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." The state argues that the ordinance is "regulating traffic" by means of a traffic control signal and enforcing those traffic control signals through the use of photographic and video evidence captured by the cameras. But the legislature has narrowly defined "police officer" and "traffic control signal," indicating its intent to limit the meaning of these terms. And those narrow definitions confirm that the purpose of section 169.04 is only to authorize a city to direct the movement of vehicles on the roadway, not to authorize a city to establish the rules of the road or to enlarge a city's authority to enforce traffic laws.

We conclude that the narrow provision cannot be read to authorize a city to prohibit conduct that is not prohibited by the Act, or to provide lesser procedural protections to a person charged under the ordinance than to a person charged under the Act. Accordingly, we hold that section 169.04 does not expressly authorize the ordinance. To the contrary, previous attempts to obtain enabling legislation to authorize municipalities to enact photo enforcement of traffic violations have not been successful. *See Kuhlman,* 722 N.W.2d at 8.

■ Because the ordinance is not expressly authorized, we next address whether the ordinance conflicts with the state law on red-light violations. Both section 169.06 and section 474.630 of the ordinance define the proper procedures that drivers must follow at red lights. The statute only penalizes the driver for violating section 169.06. *See* Minn.Stat. § 169.06, subd. 4(a) ("The driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto * * *.") The ordinance goes further. First, the ordinance allows for photo enforcement of red-light violations. Second, the ordinance penalizes the *owner* of the motor vehicle. Finally, the ordinance contains a rebuttable presumption that the *owner* was the *driver* of the motor vehicle.

The state argues that there is no conflict because the ordinance covers specifically what the Act covers generally. In support of its argument, the state asserts two theories: (1) the ordinance, through section 474.640, is a specific application of owner liability found generally in the Act; and (2) the ordinance, through section 474.660, is a mechanism by which the city can indirectly enforce the statutory prohibition against drivers.

Kuhlman argues that if the ordinance is construed as imposing liability on owners, it violates the uniformity requirement of section 169.022 by expanding an owner's liability in a way that the Act does not. Kuhlman further argues that the ordinance actually imposes liability on drivers, rather than owners, because it presumes that owners are drivers. He contends that the ordinance's language creates a differ-

ent burden of proof for driver liability than is imposed by the Act, violating *Hoben*'s requirement that a municipality must provide the same procedural protections for prosecution under an ordinance as exist under the Act.

The state's first argument—that the ordinance is a specific application of owner liability created generally by statute—must fail because the Act does not create general owner liability for traffic violations. Instead, the Act places liability for traffic violations on owners in only specific, limited circumstances. First, an owner is guilty of a petty misdemeanor if the motor vehicle fails to stop for a school bus that is displaying a stop signal arm and flashing red lights. Minn.Stat. § 169.444, subds. 1, 6 (2006). Second, an owner is guilty of a petty misdemeanor if the motor vehicle fails to stop for a passing emergency vehicle. Minn.Stat. § 169.20, subds. 5, 5b (2006). Third, it is unlawful for an owner "to require or knowingly permit" the driver to violate the Act. Minn.Stat. § 169.90, subd. 2 (2006). Thus, the Act does not provide for owner liability for the failure of the motor vehicle to stop for a red light unless the owner requires or knowingly permits the driver to fail to stop. In this sense, the owner liability provided by the ordinance is more general, not more specific, than that provided by the Act.

Additionally, the more limited owner liability under the Act applies equally throughout the state, whereas the broader owner liability created by the ordinance would apply only in Minneapolis. Section 474.640 thus "adds a requirement that is absent from the statute," *Duffy*, 265 Minn. at 254, 121 N.W.2d at 347, namely owner liability for red-light violations where the owner neither required nor knowingly permitted the violation.

We emphasized in *Duffy* that a driver must be able to travel throughout the state without the risk of violating an ordinance with which he is not familiar. *Id.* at 255, 121 N.W.2d at 348. The same concerns apply to owners. But taking the state's argument to its logical conclusion, a city could extend liability to owners for any number of traffic offenses as to which the Act places liability only on drivers. Allowing each municipality to impose different liabilities would render the Act's uniformity requirement meaningless. *See* Minn. Stat. § 169.022. Such a result demonstrates that section 474.640 conflicts with state law.

The state's second argument—that the statute does not conflict with state law because the ordinance allows the city to enforce red-light violations by drivers, which is conduct prohibited by the statute, must also fail. That argument would require us to treat the owner as the driver under the ordinance because section 474.640 of the ordinance only imposes liability on owners, not drivers. And that argument would also require us to enforce section 474.660, which creates a presumption that the owner was the driver. Subdivision (a) of section 474.660 states that

> prima facie evidence that the vehicle described in the citation was operated in violation of this section, together with proof that the defendant was at the time of such violation the owner or lessee of the vehicle, shall constitute in evidence a rebuttable presumption that such owner or lessee was the person who committed the violation.

The problem with the presumption that the owner was the driver is that it eliminates the presumption of innocence and shifts the burden of proof from that required by the rules of criminal procedure. This violates the rule in *Hoben* that an ordinance cannot provide less procedural protection to the person charged than would be available if the person were

charged under the Act. 256 Minn. at 444, 98 N.W.2d at 819.

The state argues that the ordinance meets *Hoben*'s requirements and does not conflict with the Act because the rules of criminal procedure are applicable to both a charge under the ordinance and one under the Act. The state also cites to the court of appeals' decision in *State v. Eakins* for the proposition that the presumption in the ordinance could not violate principles of criminal law because a petty misdemeanor is not within the definition of a crime under the criminal code. 720 N.W.2d 597, 601 (Minn.App.2006) (citing Minn.Stat. § 609.02, subd. 1 (2006), which defines a "crime" as "conduct which is prohibited by statute and for which the actor may be sentenced to imprisonment, with or without a fine").

Regardless of whether petty misdemeanors are considered to be "crimes" under the criminal code, the rules of criminal procedure specifically apply to petty misdemeanors. Minn. R.Crim. P. 1.01. And those rules require that a defendant be "presumed innocent until proven guilty beyond a reasonable doubt." Minn. R.Crim. P. 23.05, subd. 3. Thus, in any prosecution under the Act, the state has the burden to prove beyond a reasonable doubt that the owner was driving at the time of the red-light offense, and the owner has no obligation to prove anything.

On the other hand, section 474.660 of the ordinance requires the owner to rebut the presumption that he or she was the driver, or face liability as the owner. Therefore the ordinance provides less procedural protection to a person charged with an ordinance violation than is provided to a person charged with a violation of the Act. Accordingly, the ordinance conflicts with the Act and is invalid.

The state argues that even if section 474.660 is invalid because it creates a pre-sumption that the owner is the driver, that section can be severed and the owner may still be held liable under section 474.640. But, as we discussed above, section 474.640 is itself in conflict with state law because it imposes liability on owners who would not be liable under the Act. Thus we need not analyze the question of severance because it would not alter the outcome in this case.

The state argues that there are compelling public safety considerations that underlie the ordinance, citing that numerous accidents occur as a result of red-light violations and they often lead to "serious injuries, death, extensive property damage and high insurance costs." Our decision is not meant to minimize those considerations, but only to clarify that they are not relevant to a preemption analysis and are most appropriately addressed to the legislature.

We hold that Minneapolis Code of Ordinances sections 474.620 to 474.670 are invalid because they are in conflict with the Act, and specifically with Minn.Stat. § 169.06, subd. 4(a), and Minn.Stat. § 169.022.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.