LILLEHAUG, Justice.
This case requires us to decide whether state law preempts a proposal to amend the charter of the City of Bloomington (the *458 City) to require voter approval before the City can implement organized collection of solid waste. Appellants, a group of Bloomington residents, proposed the charter amendment. The city declined to place the proposed amendment on a ballot on the ground that Minn. Stat. § 115A.94 (2016), which specifies processes that municipalities must follow before implementing organized collection, preempted the "field" of regulation of the process by which a city organizes waste collection. The district court and the court of appeals agreed with the City. We reverse.
FACTS
Late in 2014, the City initiated a process to switch from a system of "open collection" of mixed solid waste to a system of "organized collection." In open collection, individual residents contract with city-licensed solid waste collectors of their choice. In a system of organized collection, by contrast, a municipality contracts with a single solid-waste collector or an organization of collectors, who "collect from a defined geographic service area or areas." Minn. Stat. § 115A.94, subd. 1.
The City initiated this process by passing a resolution to negotiate with existing City-licensed trash haulers. The City subsequently formed an "Organized Collections Options Committee" ("OCOC") to explore the details of implementing organized collection, while simultaneously negotiating with the haulers. The haulers submitted a proposal in April 2015. The OCOC produced a report that included an option to proceed with the haulers' proposal. The City held a public hearing on the option. The city council then voted for organized collection. On December 21, 2015, the City executed a contract with the haulers for organized waste collection.
During this process, appellants petitioned the City for a ballot initiative seeking the enactment of an ordinance that would require voter approval before the City could implement organized collection. The city attorney rejected the ballot initiative on two grounds. The first ground was that the proposed ordinance was preempted by state law. Specifically, the city attorney opined that Minn. Stat. § 115A.94, which outlines steps that a municipality must take before organizing collection of solid waste, preempted the "field" of regulation of the process by which a city organizes collection. The second ground was that the ballot initiative was premature because it put an issue to the voters relating to an ordinance that the City had not yet passed.
In Hennepin County District Court, appellants challenged the city attorney's decision not to approve the ballot initiative. The district court granted the City's motion for summary judgment. Jennissen v. City of Bloomington , No. 27-CV-15-11494, Order at 2 (Henn. Cty. Dist. Ct. filed Apr. 25, 2016). The court determined that appellants' initiative was "not a proper ordinance" because the citizens' "initiative power and the city council's power to enact ordinances are co-extensive." Id. at 8, 9. Thus, held the court, appellants' "proposed limitation on the power of the city council must be accomplished, if at all, by amendment of statute or city charter, not by ordinance." Id. at 7.
Appellants then submitted a proposed charter amendment to the City for placement on a ballot. It read:
Unless first approved by a majority of voters in a state general election, the City shall not replace the competitive market in solid waste collection with a system in which solid waste services are provided by government-chosen collectors or in government-designated districts. The adoption of this Charter amendment shall supersede any ordinances *459 ... related to solid waste adopted by the City Council in 2015-2016.
The City declined to place the proposal on the ballot, again deciding that the proposal was preempted by state law.[1] Again, appellants sued.
The district court granted the City's motion for summary judgment. The court held that Minn. Stat. § 115A.94 preempted the proposed charter amendment by fully occupying the field of regulation of the process by which a city organizes collection. The court of appeals agreed. Jennissen v. City of Bloomington , 904 N.W.2d 234, 243 (Minn. App. 2017). We granted review.
ANALYSIS
The only issue before us is whether appellants' proposed charter amendment is preempted by state law. Whether state law preempts a municipal charter provision, "and therefore charter amendments," is a question of law that we review de novo. See Bicking v. City of Minneapolis , 891 N.W.2d 304, 312 (Minn. 2017).
In considering whether Minn. Stat. § 115A.94 preempts appellants' proposed charter amendment, we bear in mind that Bloomington is a home rule charter city. "Any local government unit when authorized by law may adopt a home rule charter for its government." Minn. Const. art. XII, § 4. A city charter "may provide for any scheme of municipal government not inconsistent with the constitution, and may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions, as fully as the legislature might have done before home rule charters for cities were authorized...." Minn. Stat. § 410.07 (2016).
Nevertheless, "charter provisions (and therefore charter amendments) must be consistent with state law and state public policy." Bicking , 891 N.W.2d at 312. "Notwithstanding a city's broad power to legislate in regard to municipal affairs, state law may limit the power of a city to act in a particular area." City of Morris v. Sax Invs., Inc. , 749 N.W.2d 1, 6 (Minn. 2008) (citation omitted) (internal quotation marks omitted). Cities have no power to regulate in a manner that conflicts with state law or invades subjects that have been preempted by state law. Bicking , 891 N.W.2d at 313.
We have recognized three types of state preemption of municipal legislative authority: express preemption, conflict preemption, and field preemption. See id. at 313 n.8. Express preemption occurs when "the legislature has expressly declared that state law shall prevail over municipal regulation." Id. ; see also State v. Kuhlman , 722 N.W.2d 1, 4 (Minn. App. 2006) (citing Mangold Midwest Co. v. Village of Richfield , 274 Minn. 347, 143 N.W.2d 813, 816 (1966) ), aff'd , 729 N.W.2d 577 (Minn. 2007). Conflict preemption occurs when state and local laws "contain express or implied terms that are irreconcilable with each other, when [local law] permits what the statute forbids, or when [local law] forbids what the statute expressly permits." Bicking , 891 N.W.2d at 313 (quoting Mangold , 143 N.W.2d at 816 ) (internal quotation marks omitted) (emphasis omitted). Field preemption occurs *460 when "the Legislature has comprehensively addressed the subject matter such that state law now occupies the field." Id. at 313 n.8 ; see also Mangold , 143 N.W.2d at 819 (explaining the " 'occupation of the field' concept").
Both parties assert, and the courts below assumed, that only field preemption is at issue in this case.[2] To determine whether state law has "occupied the field," leaving no room for supplemental municipal legislation, we consider four questions:
(1) What is the 'subject matter' which is to be regulated? (2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern? (3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern? (4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general populace of the state?
Mangold , 143 N.W.2d at 820 ; see also City of Morris , 749 N.W.2d at 6-7. We refer to these four questions as "the Mangold factors."
A.
We begin with the subject matter. In identifying the subject matter, we look first to the relevant state statute to determine what the Legislature intended to regulate. See Swanson v. Brewster , 784 N.W.2d 264, 284 (Minn. 2010) ("Our primary goal in statutory interpretation is to give effect to the intent of the Legislature.").
Chapter 115A of the Minnesota Statutes is the Minnesota Waste Management Act. "It is the goal of [chapter 115A] to protect the state's land, air, water, and other natural resources and the public health by improving waste management in the state...." Minn. Stat. § 115A.02(a) (2016). The relevant statute, Minn. Stat. § 115A.94, outlines certain procedures related to the process of implementing organized collection of solid waste.
Based on the plain language of section 115A.94, we conclude that the subject matter is the process a city must follow before it can organize waste collection. The parties disagree about how extensively the statute defines this process and whether it includes the actual decision to establish organized collection. To determine whether the statute completely and exclusively describes the process, we turn to the second Mangold factor.
B.
Under the second Mangold factor, we ask whether "the subject matter [has] been so fully covered by state law as to have become solely a matter of state concern." Mangold , 143 N.W.2d at 820. Understanding what is-and is not-within the reach of section 115A.94 is critical to our preemption analysis.
Specifically, if a city is considering adopting organized collection, and the city has "more than one licensed collector," the city must first "notify the public and all licensed collectors in the community." Minn. Stat. § 115A.94, subd. 4d. This notice commences a 60-day "negotiation period" in which the city meets and negotiates *461 with licensed collectors to develop a proposal for how participating collectors collect solid waste. Id. If the negotiation results in an agreement that is executed between the city and participating collectors, "the city ... shall establish organized collection through appropriate local controls" and "is not required to fulfill the requirements" of the alternate procedure for establishing organized collection provided in subdivisions 4a-c.[3]
If a city does not follow the process laid out in subdivision 4d, the city, "by resolution of the governing body, must establish an organized collection options committee [ ("OCOC") ] to identify, examine, and evaluate various methods of organized collection." Id. , subd. 4a. Subdivision 4b outlines the duties of the OCOC. These duties generally further the goals of the OCOC as specified in subdivision 4a-"to identify, examine, and evaluate various methods of organized collection." See id. , subd. 4b(1)-(4). The OCOC must "issue a report on the committee's research, findings, and any recommendations to the governing body" of the city. Id. , subd. 4b(5).
Then, the governing body "shall consider the report and recommendations" of the OCOC. Id. , subd. 4c. "The governing body must provide public notice and hold at least one public hearing before deciding whether to implement organized collection." Id. The statute specifies that "[o]rganized collection may begin no sooner than six months after the effective date of the decision of the governing body of the city or town to implement organized collection." Id. Whether a city follows the procedure laid out in subdivision 4d or in subdivisions 4a-c, the city must still provide public notice and hold at least one public hearing as specified in subdivision 4c. Id. ; id. , subd. 4d.
Subdivision 6 makes clear that cities are neither required to, nor prevented from, adopting organized collection. Id. , subd. 6. Subdivision 6(a) states: "The authority granted in this section to organize solid waste collection is optional and is in addition to authority to govern solid waste collection granted by other law." Subdivision 6(c) provides that a city "may exercise any authority granted by any other law, including a home rule charter, to govern collection of solid waste."
Subdivision 7 of the statute protects municipalities and participating collectors from antitrust liability if they organize collection according to the statute's requirements.
No doubt the statute provides detailed procedures. But it does not fully cover the field, for three reasons.
First, the detailed process does not include a municipality's actual decision to organize collection. That is, even if a municipality initiates either of the two processes described in section 115A.94, or both, the statute does not require the municipality to establish organized collection. Indeed, subdivision 6 emphasizes that the authority granted by the statute neither "require[s]" nor "prevent[s]" organized collection. Minn. Stat. § 115A.94, subd. 6(b).
Second, the statute describes only the minimum steps that a municipality must take to organize collection. It is not an exclusive process. Put another way, a municipality is free to add steps to the process so long as they are authorized by other law. This authority is evident in multiple provisions of section 115A.94. See , e.g. , id. , subd. 4b(2) (requiring the OCOC to establish a list of criteria which "may *462 include" certain considerations); id. , subd. 4b(4) (requiring the OCOC to "seek input from, at a minimum" four types of stakeholders); id. , subd. 4c (requiring the governing body to hold "at least one public hearing").
Third, perhaps the strongest signal of the Legislature's intent not to preempt, but to provide municipalities with considerable flexibility, is found in subdivision 6. In addition to clarifying that organizing collection is optional for municipalities, subdivision 6 expressly states that "the authority granted in this section ... is in addition to authority to govern solid waste collection granted by other law ," id ., subd. 6(a) (emphasis added), "including a home rule charter ." Id. , subd. 6(c) (emphasis added). Thus, section 115A.94 expressly leaves room for any municipal action that is authorized under a city charter or other law relating to organized collection or the governance of solid waste collection.
Therefore, the statute does not require municipalities to organize waste collection; it only describes the minimum steps that a municipality is required to take before doing so. We conclude that the Legislature has not "so fully covered" the subject matter as to show that it is "solely a matter of state concern."
C.
Under the third Mangold factor, we consider whether the Legislature, in "partially regulating the subject matter," has done so in a manner that demonstrates that the subject matter is solely one of state concern. Mangold , 143 N.W.2d at 820. As we have discussed, the Legislature clearly contemplated that municipalities would exercise additional authority granted by other laws in the process of organizing collection. And, in subdivision 6, the Legislature professed neutrality on whether or not a municipality should organize collection. Therefore, we cannot conclude that the Legislature intended for its partial regulation of the subject matter to show that it is solely a matter of state concern. The plain language of the statute suggests to the contrary.
D.
Under the fourth Mangold factor, we ask whether "the subject matter itself [is] of such a nature that local regulation would have unreasonably adverse effects upon the general populace of the state." Mangold , 143 N.W.2d at 820. Again, based on the plain language of section 115A.94, we conclude that the Legislature intended to impose minimum standards, but also provide municipalities considerable flexibility, should they wish to explore organizing collection of solid waste. The Legislature allowed the process of organizing collection to differ from community to community. It follows that local regulation would not have unreasonably adverse effects upon the general populace of the state.
In sum, applying the Mangold factors, we hold that the Legislature did not intend to occupy the field of regulation of the process of organizing collection of solid waste. We therefore conclude that appellants' proposed charter amendment is not preempted by state law. Because we decide only this issue, we remand to the court of appeals for consideration of the remaining issues not previously addressed by the court of appeals.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand to that court for further proceedings.
Reversed and remanded.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

The City also concluded that the proposed charter amendment was manifestly unconstitutional because it would impair the City's existing contract with the haulers for organized collection. The district court held that the proposed referendum was not manifestly unconstitutional. The court of appeals did not address this issue. We denied the City's petition for conditional cross-review, so the issue is not before us.

Amicus curiae League of Minnesota Cities argues that, in addition to being field preempted, appellants' proposed charter amendment is conflict preempted. Because the City has not made this argument, however, we do not consider it. See Hegseth v. Am. Fam. Mut. Ins. Grp. , 877 N.W.2d 191, 196 n.4 (Minn. 2016) ("We generally will not consider arguments raised for the first time on appeal, and we generally will not decide issues raised solely by an amicus" (internal citations omitted) ).

Here, the City followed both procedures simultaneously, but ultimately executed a contract with the licensed haulers consistent with the procedure specified in subdivision 4d.