WORKE, Judge
This appeal concerns a City of Minneapolis ordinance regulating the minimum wage employers must pay their employees for time worked within the geographic boundaries of the city. Appellant Graco, Inc. sued respondent City of Minneapolis, seeking a declaratory judgment that the ordinance is preempted by state law and a permanent injunction against enforcement of the ordinance. After a court trial, the district court concluded that the ordinance is not preempted by state law, declared the ordinance valid and enforceable, and denied a permanent injunction.
We agree that the city's minimum-wage ordinance is not preempted by state law. Therefore, we affirm.
FACTS
MFLSA establishes the minimum-wage rates employers are required to pay their employees throughout the state of Minnesota. Minn. Stat. § 177.24. It includes the following statement of purpose:
The purpose of the Minnesota Fair Labor Standards Act is (1) to establish minimum wage and overtime compensation standards that maintain workers' health, efficiency, and general well-being; (2) to safeguard existing minimum wage and overtime compensation standards *266 that maintain workers' health, efficiency, and general well-being against the unfair competition of wage and hour standards that do not; and (3) to sustain purchasing power and increase employment opportunities.
Minn. Stat. § 177.22. Since its enactment in 1973, the minimum-wage rate for employees has been amended nine times, with each amendment increasing the minimum wage in some way. See 2014 Minn. Laws ch. 166, § 2, at 231-32; 2005 Minn. Laws ch. 44, § 1, at 322-23; 1997 2nd Spec. Sess. Minn. Laws ch. 1, § 1, at 5-6; 1990 Minn. Laws ch. 418, § 2, at 827-28; 1987 Minn. Laws ch. 324, § 1, at 1922; 1984 Minn. Laws ch. 628, art. 4, § 1, at 1666; 1979 Minn. Laws ch. 281, § 2, at 618; 1977 Minn. Laws ch. 183, § 1, at 301; 1976 Minn. Laws ch. 165, § 1, at 495. In its current version, MFLSA provides formulas for calculating rates for small and large employers and requires employers to pay wages at least those rates. Minn. Stat. § 177.24, subd. 1(a)-(b).[1] MFLSA currently requires large employers to pay their employees at least $ 9.50 per hour plus a percentage based on inflation, while small employers are required to pay their employees at least $ 7.75 per hour plus a percentage based on inflation. Id. , subd. 1(b)(1)-(2), (f). As of January 1, 2019, the statutory formulas result in a minimum wage of $ 9.86 per hour for large employers and $ 8.04 per hour for small employers. See Minn. Dep't of Labor & Indus., Minnesota's Minimum Wage Laws (2019) , https://www.dli.mn.gov/sites/default/files/pdf/minimum_wage.pdf.
In February 2016, the Minneapolis City Council engaged the University of Minnesota's Roy Wilkins Center for Human Relations and Social Justice (RWC) to analyze the impact of a local minimum-wage increase. In October 2016, RWC completed its study and reported its findings to the city council. As a result of this report, the city council approved a community-engagement plan to gather community feedback through listening sessions, survey responses, and email comments. On June 30, 2017, the city enacted the Municipal Minimum Wage Ordinance (the Ordinance). The Ordinance currently requires "large businesses" to pay their employees at least $ 11.25 per hour and "small businesses" to pay their employees at least $ 10.25 per hour. Minneapolis, Minn. Code of Ordinances (MCO) § 40.390(a)(b)(2), (c)(1).[2] The Ordinance applies to time worked within the geographic boundaries of Minneapolis. MCO § 40.370.
On November 10, 2017, Graco and others sued the city, seeking a declaratory judgment that the Ordinance is preempted by state law, and also seeking temporary and permanent injunctions to prohibit enforcement of the Ordinance. The district court denied the motion for a temporary injunction, finding that plaintiffs were unlikely to prevail on the merits and that the public and city would suffer greater harm than plaintiffs if the injunctions were *267 granted. After a court trial, the district court denied Graco's claim for a declaratory judgment and Graco's motion to permanently enjoin enforcement of the Ordinance. The district court determined that the Ordinance does not conflict with, and is not impliedly preempted by, MFLSA. On April 5, 2018, the district court entered judgment on its second amended order. Graco appealed to this court and petitioned the supreme court for accelerated review, which the supreme court denied.
ISSUES
I. Does the Minneapolis Municipal Minimum Wage Ordinance impermissibly conflict with the Minnesota Fair Labor Standards Act?
II. Does the Minnesota Fair Labor Standards Act impliedly preempt the Minneapolis Municipal Minimum Wage Ordinance?
ANALYSIS
The City of Minneapolis is a home-rule-charter city. As such, the city has, in municipal matters, "all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld." Bolen v. Glass , 755 N.W.2d 1, 4-5 (Minn. 2008) (quotation omitted). Despite this broad power to legislate in regard to municipal affairs, "state law may limit the power of a city to act in a particular area." City of Morris v. Sax Invs., Inc. , 749 N.W.2d 1, 6 (Minn. 2008). "Cities have no power to regulate in a manner that conflicts with state law or invades subjects that have been preempted by state law." Jennissen v. City of Bloomington , 913 N.W.2d 456, 459 (Minn. 2018).
When evaluating whether state law preempts a municipal ordinance, we consider whether: (1) "the legislature expressly declared that state law shall prevail over" the ordinance (express preemption), (2) the ordinance "conflicts with state law" (conflict preemption), and (3) "the [l]egislature has comprehensively addressed the subject matter such that state law now occupies the field" (implied preemption). Bicking v. City of Minneapolis , 891 N.W.2d 304, 313 n.8 (Minn. 2017). The parties agree that express preemption is inapplicable in this case. Graco contends that the Ordinance impermissibly conflicts with MFLSA and that MFLSA impliedly preempts the Ordinance. Whether state law preempts a municipal ordinance is a question of law, which we review de novo. Id. at 312.
I. Conflict Preemption
Graco argues that the Ordinance conflicts with MFLSA because the Ordinance forbids what MFLSA expressly permits and adds requirements absent from MFLSA. Graco's conflict-preemption claim rests squarely on the premise that MFLSA sets both a floor and a ceiling, thereby prohibiting municipalities from establishing a wage rate in excess of the state minimum wage. We are not persuaded.
In Mangold Midwest Co. v. Village of Richfield , the supreme court considered whether a municipal ordinance that prohibited businesses, except those with four or fewer employees, from selling groceries on Sunday impermissibly conflicted with a state law prohibiting the sale of groceries on Sunday. 274 Minn. 347, 143 N.W.2d 813, 818 (1966). The supreme court identified four "general principles" that guide conflict-preemption analysis. Id. at 816-17. First, "[a]s a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other." Id. at 816. Second, "it has been said that conflict *268 exists where the ordinance permits what the statute forbids." Id. Third, "a conflict exists where the ordinance forbids what the statute expressly permits." Id. at 816. And finally, "[i]t is generally said that no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute." Id. at 817.
Because the state law in Mangold prohibited particular acts, the supreme court focused on the second principle: whether the municipal ordinance permitted conduct prohibited under state law. See id. at 817-19. The court rejected the argument that the ordinance permitted what state law prohibited, concluding that the ordinance did not "specifically authorize" any grocery sales on Sunday. Id. at 818-19. Rather, the court deemed the ordinance a "complementary regulation which simply fails to make sales of groceries by certain establishments an additional offense under the ordinance." Id. at 819. Ultimately, the Mangold court concluded that the statute and ordinance were not irreconcilable because "the ordinance does not permit, authorize, or encourage violation of the statute." Id. at 819.
To apply the Mangold principles, we must first determine whether MFLSA prohibits or permits particular acts. Graco contends that MFLSA "expressly authorizes employers to pay the minimum wage rates set forth in the [statute]." We disagree. MFLSA provides that employers "must pay each employee at least " the minimum wage. Minn. Stat. § 177.24, subd. 1(b) (emphasis added). Thus, MFLSA is a prohibitive statute rather than a permissive one; it prohibits an employer from paying less than the legislatively set minimum wage. Nothing in MFLSA "specifically authorizes" an employer to pay no more than the statutory minimum wage. See Mangold , 143 N.W.2d at 818-19 (noting ordinance that failed to prohibit small businesses from selling groceries on Sunday contained no "specific authorization" of Sunday sales). The stated purposes of MFLSA, including "to establish minimum wage and overtime compensation standards that maintain workers' health, efficiency, and general well-being," Minn. Stat. § 177.22, demonstrate that the statute does not permit an employer to pay the minimum wage, but rather prohibits an employer from paying less than the minimum wage.
Because MFLSA prohibits certain conduct, the second Mangold conflict-preemption principle is relevant to our analysis. Our inquiry under the second principle is easily resolved because it is undisputed that the Ordinance does not permit employers to pay lower wage rates than required by MFLSA. Thus, the Ordinance does not permit what MFLSA forbids, and is not in conflict in that respect.
Graco and the dissent focus on the third Mangold principle, contending that MFLSA expressly authorizes an employer to pay the minimum wage designated by statute, and the Ordinance forbids this by requiring that employers pay a higher minimum wage. As explained above, we disagree with Graco's characterization of MFLSA. MFLSA mandates that employers "must pay each employee wages at a rate of at least" the rate set by state law. Minn. Stat. § 177.24, subd. 1(b)(1) ; see also id. , subd. 1(b)(2). Nothing in the wages language of MFLSA expressly permits employers to do any particular act. Graco points to no language in MFLSA expressly permitting employers to cap wage rates at the state minimums. An express purpose of MFLSA is "to establish minimum wage and overtime compensation standards that maintain workers' health, efficiency, and general well-being." Minn. Stat. § 177.22 (emphasis added). To this end, MFLSA
*269 expressly requires employers to pay at least the minimum-wage rates set forth in its provisions. Minn. Stat. § 177.24, subd. 1(b)(1)-(2). MFLSA does not expressly permit employers to pay the state minimum wage, nor does it expressly free an employer from local minimum-wage regulation.[3]
In 2015, the Minnesota Legislature explicitly acknowledged the potential for a local minimum-wage law. The legislature defined "noncompetitive employment" as "paid work: (1) that is performed on a full-time or part-time basis, including self-employment, for which the person is compensated at a rate that is less than the higher rate specified in [federal law] or the rate specified in the applicable state or local minimum wage law ." 2015 1st Spec. Sess. Minn. Laws ch. 1, art. 2, § 16, at 1646 (emphasis added) (codified at Minn. Stat. § 268A.01, subd. 15 (2018) ). If MFLSA prohibited more stringent local minimum-wage laws, it could not be reconciled with this statute. To the extent MFLSA is ambiguous with respect to whether it provides a floor or a ceiling, well-established rules of statutory construction require us to read it in pari materia with related statutes. See State v. Thonesavanh , 904 N.W.2d 432, 437 (Minn. 2017). Construing the statutes in harmony, as we must, supports our reading of MFLSA to establish a floor, not a ceiling.
At best, an argument can be made that MFLSA impliedly permits employers to pay employees the legislatively set minimum wage. But the third Mangold conflict-preemption principle requires conduct that is expressly permitted by statute. Implied statutory permission is insufficient to invalidate the Ordinance under conflict preemption. See Bicking , 891 N.W.2d at 313 ("a conflict exists between state law and a municipal regulation ... when 'the ordinance forbids what the statute expressly permits' " (quoting Mangold , 143 N.W.2d at 816 )).
Graco also argues that the Ordinance conflicts with MFLSA on the ground that the Ordinance places additional requirements on employers not present in MFLSA. It is not clear whether this argument is materially different from Graco's argument that the Ordinance prohibits what MFLSA permits. Graco cites Bicking for the proposition that an ordinance necessarily conflicts with state law if the ordinance "adds a requirement that is absent from the statute." 891 N.W.2d at 314 (quotation omitted). Graco also relies on Duffy v. Martin , 265 Minn. 248, 121 N.W.2d 343, 348 (1963). But these cases do not stand for the proposition that an ordinance is necessarily preempted if it includes additional requirements not present in state law. Instead, these cases address ordinances that sought to add requirements that would disrupt a uniform set of state regulations. See Bicking , 891 N.W.2d at 307, 314 (holding that proposed charter amendment requiring police officers to carry professional liability insurance as the officer's primary insurance conflicted with city's mandatory defense and indemnification obligation and option to procure additional insurance); Duffy , 121 N.W.2d at 346 ("In order to provide uniformity in traffic regulations throughout the state, our legislature has prohibited the enactment of ordinances by municipalities in conflict with state statutes ... except where expressly authorized."). Graco does not identify any legal authority for the proposition that, absent a comprehensive statutory scheme, a municipal ordinance is in conflict merely because it imposes requirements that are *270 absent from the statute. And the fourth Mangold principle makes clear that "no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute." 143 N.W.2d at 817.
Finally, and perhaps most significantly, under the first Mangold principle, a conflict exists only if the Ordinance and MFLSA are irreconcilable. See id. at 816. Two laws are not irreconcilable if "the ordinance does not permit, authorize, or encourage violation of the statute." Id. at 819. As enacted, the Ordinance does not permit, authorize, or encourage violation of the statute because an employer that complies with the Ordinance necessarily complies with MFLSA. As its statement of purpose indicates, MFLSA sets a floor for minimum-wage rates, not a ceiling. See Minn. Stat. § 177.22. Thus, the terms of the Ordinance and MFLSA are not irreconcilable. See The American Heritage Dictionary of the English Language 953 (3rd ed. 1992) (defining "irreconcilable" as "impossible to reconcile").
Graco argues that Minnesota appellate courts have found conflict where state law set a floor but not a ceiling, citing Bd. of Supervisors v. ValAdCo , 504 N.W.2d 267 (Minn. App. 1993), review denied (Minn. Sept. 30, 1993), and Nw. Residence, Inc. v. Brooklyn Center , 352 N.W.2d 764 (Minn. App. 1984), review denied (Minn. Jan. 4, 1985). In ValAdCo , a cooperative of farmers applied for and received permits from the Minnesota Pollution Control Agency to construct hog feedlots. 504 N.W.2d at 268. After the application was submitted, but before approval, a township enacted an ordinance with different pollution-control requirements than those established by the state agency, and requiring the farmers to obtain a separate township permit. Id. at 269. This court held that the ordinance conflicted with state law because the farmers were barred under the ordinance from constructing feedlots authorized by state law. Id. at 272. But ValAdCo addressed the Minnesota Pollution Control Act, which this court had previously acknowledged expressly prohibited local governments from setting air-quality standards more stringent than those set by the state. See State v. Apple Valley Redi-Mix, Inc. , 379 N.W.2d 136, 139 (Minn. App. 1985) (citing Minn. Stat. § 116.07, subd. 2 (1984) ). Here, in contrast, neither MFLSA nor any other state law expressly limits a municipality's authority to set a minimum-wage rate higher than the rate set by the state.
In Northwest Residence , a corporation applied to the City of Brooklyn Center for a special-use permit to convert a fourplex into a residential facility for mentally ill adults. 352 N.W.2d at 766. A state statute permitted a municipality to impose special conditions on residential facilities, provided they were not more restrictive than those imposed on other special uses of residential properties located in the same zone. Id. at 773 ; see Minn. Stat. § 245.812, subd. 4 (1982). The Brooklyn Center City Council nevertheless denied the corporation's special-use permit for 18 mentally ill residents, even though it would have allowed at least 18 mentally healthy people to live in the property. See Nw. Residence , 352 N.W.2d at 765, 771. We held that even if the city had the power to impose special occupancy standards for mentally ill adults, the local regulation would forbid what state law expressly permits, and thus be invalid. Id. at 774. As explained above, no language in MFLSA expressly allows employers to pay a lower rate than that required by the Ordinance.
In Mangold , the supreme court explained that an ordinance "must not be repugnant to" and must be "in harmony with" state statutes. 143 N.W.2d at 816 *271 (quoting Power v.Nordstrom , 150 Minn. 228, 184 N.W. 967, 969 (1921) ). A valid ordinance must be "co-operative and not antagonistic to the general law." Id. (quoting City of Duluth v. Evans , 158 Minn. 450, 197 N.W. 737, 737 (1924) ). We discern no disharmony or antagonism between the Ordinance and MFLSA. Because the terms of the two laws are not irreconcilable, the Ordinance does not permit what MFLSA prohibits, and the Ordinance does not prohibit what MFLSA expressly permits, we conclude that the Ordinance does not conflict with MFLSA. Thus, the Ordinance is not preempted based on a conflict with state law.
II. Implied Preemption
Graco next argues that MFLSA impliedly preempts the Ordinance by occupying the field of minimum-wage regulation. Implied preemption "occurs when the Legislature has comprehensively addressed the subject matter such that state law now occupies the field." Jennissen , 913 N.W.2d at 459-60 (quotation omitted). Implied preemption "is premised on the right of the state to so extensively and intensively occupy a particular field or subject with state laws that there is no reason for municipal regulation." Nordmarken v. City of Richfield , 641 N.W.2d 343, 348 (Minn. App. 2002), review denied (Minn. June 18, 2002). When implied preemption applies, "a local law purporting to govern, regulate, or control an aspect of the preempted field will be void, even if the local law is not in conflict with the state law." Id. Minnesota courts consider four factors-the Mangold factors-in determining whether implied preemption exists:
(1) What is the "subject matter" which is to be regulated? (2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern? (3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern? (4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general populace of the state?
143 N.W.2d at 820.
We agree with the parties that the subject matter to be regulated is minimum wages for workers. With respect to the second Mangold factor, Graco argues that the subject matter of minimum wages is so fully covered by MFLSA that it has become solely a matter of state concern. Specifically, Graco contends that the legislature's "extensive regulation of the minimum wage" demonstrates that MFLSA completely occupies the field.
Understanding what is and is not in MFLSA is critical when considering this factor, and to the preemption analysis as a whole. See Jennissen , 913 N.W.2d at 460. As previously mentioned, the legislature has amended MFLSA's minimum-wage formulas nine times since its enactment. In addition, MFLSA has been updated to define "small" and "large" employers, differentiate minimum-wage rates based upon the age of employees and type of employer, distinguish between employees covered by the federal Fair Labor Standards Act and those covered by MFLSA, and clarify that tips and gratuities do not apply toward payment of the minimum wage. See 2014 Minn. Laws ch. 166, § 2, at 231; 2005 Minn. Laws ch. 44, § 1, at 322; 1997 2nd Spec. Sess. Minn. Laws ch. 1, § 1, at 5-6; 1990 Minn. Laws ch. 418, § 2, at 827; 1987 Minn. Laws ch. 324, § 1, at 1922; 1977 Minn. Laws ch. 183, § 1, at 301; 1976 Minn. Laws ch. 165, § 1, at 495.
In 2014, the legislature established a formula tied to inflation for future minimum-wage rate increases, but permitted the commissioner of labor and industry to *272 restrict scheduled minimum-wage increases if economic indicators showed "the potential for a substantial downturn in the state's economy." 2014 Minn. Laws ch. 166, § 2, at 231-32. Furthermore, MFLSA permits the commissioner to "adopt rules, including definitions of terms, to carry out the purposes of sections 177.21 to 177.44, to prevent the circumvention or evasion of those sections, and to safeguard the minimum wage and overtime rates established by sections 177.24 and 177.25." Minn. Stat. §§ 177.23, subd. 3, .28, subd. 1.
Graco contends that the legislature's history of regulating the subject of minimum-wage rates demonstrates that it is solely a matter of state concern. In support, Graco relies on this court's statement in a recent decision that, generally, "the legislature's extensive regulation of a subject is evidence that the matter has become one solely of state concern." Jennissen v. City of Bloomington , 904 N.W.2d 234, 242 (Minn. App. 2017), rev'd , 913 N.W.2d 456. As an initial matter, that statement merely suggests that evidence of extensive regulation generally indicates implied preemption; it does not stand for the proposition that extensive regulation is always preemptive. Furthermore, the supreme court reversed this court's decision, including our analysis of the second and third Mangold factors. See Jennissen , 913 N.W.2d at 460-62. In reversing this court, the supreme court emphasized that, although the state law "provides detailed procedures," it was not enough to "fully cover the field." Id. at 461. Thus, the supreme court declined to adopt our reasoning in that case.
As in its conflict-preemption argument, Graco cites ValAdCo and Northwest Residence in support of its implied-preemption argument. But these cases are once again distinguishable from the matter at hand. In ValAdCo , this court emphasized the comprehensive, detailed, and project-specific nature of the Minnesota Pollution Control Act's permitting scheme and the disruption that would ensue if individual townships were free to establish their own standards. 504 N.W.2d at 269, 271-72.
In Northwest Residence , state law granted "exclusive" authority to the commissioner of public health to set license standards. 352 N.W.2d at 773. And the statute expressly prohibited a municipality from imposing special conditions on residential facilities that were more stringent than those imposed on other residential properties in the same zone. See id. In contrast, MFLSA does not expressly prohibit a municipality from setting higher minimum wages, and it does not give the commissioner exclusive authority to safeguard the state minimum-wage rates; it merely permits the commissioner to do so.
Although the legislature has indeed amended the state minimum-wage formulas nine times and set forth procedures by which to calculate future rates, we are not persuaded that this constitutes the type of all-encompassing regulations that Minnesota appellate courts have found to preempt local regulations. See Nordmarken , 641 N.W.2d at 349 (concluding that field preemption existed when the legislature set out a "detailed and elaborate structure of procedural authority and processes" for municipal land-use planning); ValAdCo , 504 N.W.2d at 269, 272 ; Nw. Residence , 352 N.W.2d at 773. And even though MFLSA permits the commissioner to adopt rules consistent with the statute, it does not suggest that municipalities cannot also adopt regulations consistent with the statute. As in Mangold , the state law in this case "is not the type of legislative enactment which purports to completely dictate the specific regulation of an area as, for instance, the tax and traffic provisions do." 143 N.W.2d at 821. Thus, the *273 second Mangold factor weighs against implied preemption.
The third Mangold factor contemplates the intent of the legislature. In its order, the district court analyzed two pieces of legislation, both of which indicate that the legislature did not intend MFLSA to impliedly preempt municipal regulation of minimum wages. First, the district court discussed a 2017 special session bill that would have expressly prohibited any "ordinance, local resolution, or local policy requiring an employer to pay an employee a wage higher than the applicable state minimum wage rate." S.F. 3, 2017 1st Spec. Sess., art. 22, § 1, subd. 2(a). The bill was vetoed by the governor. The district court reasoned that the legislature's failed attempt to expressly preempt municipal regulation of minimum-wage rates indicates that MFLSA does not evince an intent to preclude local regulation. Second, the district court analyzed Minn. Stat. § 268A.01, subd. 15(1), which, as discussed above, specifically refers to "local minimum wage law." The district court reasoned that the legislature's recognition that municipalities may enact their own minimum-wage requirements, albeit in a different statute, indicates that the legislature did not intend its partial regulation of minimum wages to prevent a municipality from enacting its own minimum-wage regulations.
Graco argues that the failed 2017 bill and Minn. Stat. § 268A.01, subd. 15, are irrelevant to the implied-preemption analysis. It is unclear how much weight should be given to a failed express-preemption bill and a separate statute mentioning a "local minimum wage law" when determining whether MFLSA occupies the field of minimum-wage regulation. Although these two pieces of legislation may not have a strong bearing on our analysis in this case, they provide at least some insight into the legislature's intent.
In any event, the question before us is whether the legislature, in adopting provisions relating to minimum-wage rates, has evinced an intent to fully occupy the field. In grappling with a similar question, the supreme court stated:
We are averse ... to hold that the legislature contemplates its own regulation to exclude municipal regulation, without most clear manifestation of such intent. It is imperative, if we are to give faithful effect to legislative intent, that the legislature should manifest its preemptive intent in the clearest terms. We can be spared the sometimes elusive search for such intent if it is declared by express terms in the statute. And where that is not done in the enactments of future legislatures, we shall be increasingly constrained to hold that statutes and ordinances on the same subject are intended to be coexistent.
State v. Dailey , 284 Minn. 212, 169 N.W.2d 746, 748 (1969) (concluding misdemeanor-prostitution ordinance not preempted by gross-misdemeanor prostitution statute). Here, the legislature has not expressly manifested its preemptive intent. Absent these express terms, nothing in MFLSA indicates the legislature intended that minimum-wage regulation be solely a matter of state concern. Thus, the third Mangold factor weighs against preemption.
Under the fourth Mangold implied-preemption factor, the question is whether minimum-wage regulation is of such a nature that local regulation will have "unreasonably adverse effects upon the general populace of the state." 143 N.W.2d at 820. Graco erroneously focuses on the potential hardships the Ordinance could create for employers. Applying this factor, the district court correctly focused on the general populace, not just employers, and concluded that local minimum-wage *274 regulation will not have an adverse impact.
Graco ignores significant record evidence of the beneficial effects of the Ordinance for those who work in the city and their families. The record includes studies, data, and public input as well as a review of minimum-wage ordinances in other jurisdictions undertaken prior to enactment of the Ordinance. Input from Minneapolis workers regarding their difficulties supporting themselves and their families, especially with the high cost of living in Minneapolis, together with RWC modeling on the effect of minimum-wage laws on income and food security, support the district court's determination that the Ordinance will not have an unreasonably adverse effect on the general populace.
Graco argues that local regulation of minimum-wage rates will result in a "patchwork" of regulation that will be detrimental to the state as a whole. But the supreme court has not found the existence of "a checkerboard of conflicting regulations" to be dispositive. See G.E.M. of St. Louis, Inc. v. City of Bloomington , 274 Minn. 471, 144 N.W.2d 552, 554-55 (1966) (concluding that possibility of "a checkerboard of conflicting regulations" is not enough to give rise to implied preemption, and suggesting that any confusion resulting from local regulation is a problem best remedied by a "clear expression of the legislative will"). Finally, an ordinance regulating the minimum wage is not the type of ordinance that would impose "uncertainty and confusion" among the general populace, unlike municipal forfeiture of motor vehicles, for example. Cf. State v. Gonzales , 483 N.W.2d 736, 738 (Minn. App. 1992), review denied (Minn. June 10, 1992). Indeed, the record indicates that many businesses are routinely required to comply with a variety of local regulations that can vary from jurisdiction to jurisdiction. Because record evidence supports the district court's conclusion that the Ordinance would not result in unreasonably adverse effects upon the general populace of Minnesota, the fourth Mangold factor weighs against preemption.
Applying the Mangold factors for implied preemption, we conclude that the legislature did not intend to solely control the field of minimum-wage regulation, and the factors weigh against preemption. Thus, the district court correctly concluded that MFLSA does not impliedly preempt the Ordinance.
DECISION
The Ordinance does not conflict with MFLSA, and MFLSA does not impliedly preempt the Ordinance. Thus, the Ordinance is a valid exercise of the City of Minneapolis's legislative power, and the district court did not err in declaring the Ordinance valid and enforceable.
Dissenting, Johnson, Judge

A "large employer" is defined as "an enterprise whose annual gross volume of sales made or business done is not less than $ 500,000," exclusive of excise taxes and subject to MFLSA. Minn. Stat. § 177.24, subd. 1(a)(1). A "small employer," on the other hand, is defined as "an enterprise whose annual gross volume of sales made or business done is less than $ 500,000," exclusive of excise taxes and subject to MFLSA. Id. , subd. 1(a)(2).

Unlike MFLSA, the Ordinance differentiates between large and small employers based not on total revenue, but on number of employees. A "large business" is defined as "all employers that employ more than one hundred (100) employees," and a "small business" is defined as "all employers that employ one hundred (100) or fewer employees." MCO § 40.330.

We reiterate that no party argues that express preemption applies, i.e., that the statute expressly bars local governments from establishing a local minimum wage.